### LOVEJOY v. MURRAY.

1. A bond of indemnity given by a plaintiff in an attachment to induce the officer to hold, after levy, property not subject to the writ, makes such plaintiff a joint trespasser with the officer as to all that is done with the property afterwards.

2. A judgment against one joint trespasser is no bar to a suit against another for the same trespass. Nothing short of full satisfaction, or that which the law must consider as such, can make such judgment a bar.

3. A plaintiff in attachment who indemnifies the attaching officer, and afterwards takes upon himself the defence when that officer is sued, is concluded by the judgment against that officer where such plaintiff is afterwards sued for the same trespass.

LOVEJOY brought suit in one of the courts of Iowa against O. H. Pratt, and the sheriff attached certain personal property, which *was assumed to be the property of Pratt.* A certain Murray, however, claimed it as his. The sheriff, now in possession, was unwilling to proceed further in the attachment, or to sell the property under it, unless indemnified by Lovejoy & Co. These parties accordingly executed a bond, in which, reciting that the sheriff *had* attached and taken possession of the property, they bound themselves to pay all damages, &c. The sheriff then proceeded to sell the property under Lovejoy & Co.'s attachment, and under direction of their attorneys.

This being done, Murray sued the sheriff for an alleged trespass. The sheriff gave notice of this suit, as soon as

brought, to Lovejoy & Co., *and they defended it;* counsel, whom they paid, having taken exclusive charge of it. In this suit, Murray obtained

| | | |
|---|---|---|
| Judgment against *the sheriff* for . . | $6233 |
| Which the sheriff, *without execution issued,* satisfied to the extent of . . . | 830 |
| Leaving a balance unsatisfied of . . | $5403 |

Murray then brought suit against *Lovejoy & Co.* for this same trespass; and the facts being agreed on in a case stated, the court gave judgment for the plaintiffs for the amount of the judgment against the sheriff less the $830 paid by him.

On error here from the Massachusetts Circuit (where Lovejoy & Co. had been sued), three questions were made.

1. Did Lovejoy & Co., in giving the bond of indemnity to the sheriff, become thereby liable as joint trespassers with him in what was done under the attachment?

2. Did Murray, by suing the sheriff alone, and getting *partial satisfaction* of the judgment against *that officer,* bar himself of a right to sue Lovejoy & Co. for the same trespass?

3. Was Murray's judgment against the sheriff conclusive against Lovejoy & Co. in this suit against them?

The case was thoroughly argued on both sides, in this court, on the authorities, ancient and modern, English and our own.

*Mr. Hutchins, for Lovejoy & Co., plaintiffs in error.*

*On the first point, the effect of the bond of indemnity.* One may indemnify an officer for an act committed by him, without being himself liable for that act. He may defend a suit against a trespasser without becoming himself a trespasser. "It is sometimes said," remarked Chief Justice Gibson, of Pennsylvania,[*] "that in levying an execution the sheriff is the plaintiff's agent. Having received a sufficient bond of indemnity, or a tender of it, he is certainly bound to follow

---

[*] Fitler *v.* Fossard, 7 Pennsylvania State, 541; and see Sowell *v.* Champion. 6 Adolphus & Ellis, 417.

his instructions; but the relation between them is not that of master and servant; for the sheriff is bound to act, not by force of the plaintiff's command, but by force of the command of his writ. He is the agent of the law; and, therefore, it is that when he seizes by the plaintiff's direction the goods of a stranger on a *fieri facias* against the goods of a defendant, the parties do not stand in the relation of joint trespassers. The plaintiff creditor is not a trespasser at all; for the sheriff is bound to stand the brunt of the stranger's action. He acts at his peril, but not without a means of security; and it is his fault if he does not use it."

*On the second and principal point; how far the judgment against the sheriff operated as a bar to the suit against Lovejoy & Co.*

There seems to be a great conflict of opinion in the books, whether a judgment *alone* against one *tort-feasor* operates as a bar to a suit against another; some holding it to be an absolute bar, others that judgment *with execution* is necessary, and others that *satisfaction* is necessary.

In numerous cases which may be referred to in this country, it has been either decided, declared, or assumed, as we read the cases, that *judgment alone operates as a bar.*[*] This is the direction certainly in which these cases set. Other cases would indicate that judgment and execution so operate;[†] and in one case[‡] it has been held that absolute satisfaction was necessary.

It is impossible to reconcile the American cases. The English courts keep clear of the whole difficulty by treating the judgment, of itself, as a bar; and this we submit is the better doctrine.

---

[*] Wilkes *v.* Jackson, 2 Henning & Munford, 355; Hunt et al. *v.* Bates, 7 Rhode Island, 217; Rogers et al. *v.* Moore, 1 Rice S. C. 60, 62; Floyd *v.* Browne, Adm'r, 1 Rawle, 121; Marsh *v.* Pier, 4 Id. 288; Fox *v.* Northern Liberties, 3 Watts & Sergeant, 103, 107; Merrick's Estate, 5 Id. 9, 17; Norris *v.* Beckley, 2 Mills' Constitutional Reports, S. C., New Series, 228; Johnson et al. *v.* Packer, Nott & McCord, 1; Wilburn *v.* Bogan, 1 Spear, 179; Trafton et al. *v.* United States, 3 Story, 646; Town of Marlborough *v.* Sisson et al., 31 Connecticut, 332; Ayer *v.* Ashmead, 31 Id. 447, 453.

[†] Livingston *v.* Bishop, 1 Johnson, 290; White *v.* Philbrick, 5 Greenleaf, 147; Campbell *v.* Phelps, 1 Pickering, 65.

[‡] Sanderson *v.* Caldwell, 2 Aikin, 195.

The leading English case is *Brown* v. *Wootton*, temp. James I, reported by three different reporters, Yelverton, Croke, and Moore, all essentially in one way.* Sir Henry Yelverton gives the case thus:

"In trover of certain goods in particular, the defendant pleaded that the plaintiff had brought the like action against J. S. for the same goods before this action brought, in which suit he so far *prosequtus est* against J. S. that he had judgment and execution against J. S., and averred that the goods contained in both actions were the same goods. Upon which the plaintiff demurred, and it was adjudged *against the plaintiff.*"

This is much in point, and the case was decided in the best days of the old English law; Popham being Chief Justice; Fenner, Gawdy, Sir C. Yelverton, and Williams, eminent names in judicial history, his associates. Mr. Theron Metcalf (now Mr. Justice Metcalf, of the Supreme Court of Massachusetts), commenting on it, A.D. 1820, in his excellent edition of Yelverton, says: "*No case has been found* in which the precise point adjudged in the text, viz., that in the action of trover a former recovery against one of two or more joint *tort-feasors* for the same conversion and a writ of execution sued out is a bar, *has been otherwise decided.*"

In *King* v. *Hoare*, A.D. 1844, the Court of Exchequer† decided that a judgment, *without satisfaction*, recovered against one of two *joint* debtors, is a bar to an action against the other; though *secus* where the debt is joint and several. The court, Baron Parke giving its judgment, refers to *Brown* v. *Wootton*, just cited, and declare that "a joint contract cannot be distinguished from a joint *tort;*" thus assuming *Brown* v. *Wootton* to have been rightly decided, and in effect affirming it.

*Buckland* v. *Johnson*, decided ten years later in the Com-

---

* Yelverton, 67; Croke Jac. 73; Moore, 672.

† 13 Meeson & Welsby, 504; see, also, Leachmere & Fletcher, 1 Crompton & Meeson, 634; and what is admitted by the S. G. *arguendo*, in Bird *v.* Randal, 3 Burrow, 1347.

mon Pleas of England,* is to the same result. In that case it appeared that a father and son had wrongfully converted the goods of the plaintiff by selling them; that the proceeds of the sale, £150, were received by the son alone; and that the plaintiff had sued the father, and recovered a verdict for £100 as the value of the goods so converted; but that in consequence of his insolvency he had obtained no satisfaction. He now sued the son. But Jervis, C. J., says: "If two jointly convert goods, and one of them receives the proceeds, you cannot, after a recovery against one in trover, have an action against the other for the same conversion, or an action for money had and received to recover the value of the goods for which *a judgment has already passed in the former action.* . . . The fallacy of the plaintiff's argument arises from his losing sight of the fact, that by the judgment in the action of trover the property of the goods was changed, by relation, from the time of the conversion, and that consequently the goods from that moment became the goods of the son;" and his lordship quotes with approbation the language of Baron Parke in the case last cited: "The judgment of a court of record changes the nature of that cause of action, and prevents it being the subject of another suit; and the cause of action, being single, cannot afterwards be divided into two."

But if the court shall be of the opinion that a party may sue and recover *separate* judgments against co-trespassers, and then *elect* which judgment he will enforce, then we say that he recovery of judgment against the sheriff, and the receipt of *partial satisfaction* on that judgment from him before the commencement of this suit, will operate as a bar to this suit. How can the court proceed now to try the original trespass when it has been *partially* settled for? How would a declaration be framed? How would the court proceed at the trial? What becomes of the $800 paid? Must it not be credited in some way, or deducted? and if so, how? The plaintiff is seeking to recover full damage for a wrong partially redressed.

* 15 C. B. (80 English Common Law), 145.

In the Vermont case of *Sanderson* v. *Caldwell,** which is opposed to our general view, the judgment first recovered was *in no part satisfied.*

*On the third point, the effect of the judgment against the sheriff; is it conclusive?*

Lovejoy & Co., we think, are not estopped to defend this suit because they gave the sheriff a bond of indemnity, or because they took part in the defence of the suit against him. If this were a suit by sheriff against Lovejoy & Co. upon their bond of indemnity to him against that suit, and upon notice or otherwise they had defended the suit against him, then perhaps as between them and the officer they would have been concluded by the judgment against him. But that is not the question here. The defendants were neither parties nor privies to the judgment against the sheriff.†

*Mr. Ball, contra:*

*On the first question:* All persons who direct or request another to commit a trespass are liable as co-trespassers, and giving a bond of indemnity in such case makes the party a trespasser. The proposition is well-established elementary law, and need not be unfolded or enforced. Upon the facts the court will readily apply what we conceive to be both true and applicable.

*On the second and principal question:* It is a settled principle that all torts are several as well as joint, and that the injured party can maintain an action against all the tort-feasors jointly or against each one separately. Hence such party must have the right to pursue each tort-feasor to judgment and execution till he gets satisfaction. That *satisfaction* is the essential matter appears even in cases contemporary with *Brown* v. *Wootton,* reported in Yelverton, and which seems to be the foundation of the recent decisions in England, and is one of the citations of the opposite counsel. In

---

* 2 Aiken, 195.

† See Sprague *v.* Waite, 19 Pickering, 458; Eastman *v.* Cooper, 15 Id., 279; Church *v.* Leavenworth, 4 Day, 278.

*Cocke* v. *Jenner*, reported by Lord Hobart,* the court in speaking of joint trespassers says:

"If they be sued in several actions, though the plaintiff make choice of the best damage, yet when he hath taken one *satisfaction* he can take no more; and if he require *two* an *audita querela* will lie."

The same idea is presented in *Corbett* v. *Barnes*, which arose soon after and is reported in Sir William Jones.† The report is in Norman French, but translated, reads in the material parts, thus:

"Barnes brought trespass of assault and battery, in London, against Hill in the Common Bench and recovered; and after-wards trespass of assault and battery against Corbett in the King's Bench, and two others for the assault and battery in Hertfordshire. Hill was taken in judgment, and afterwards judgment given against the three others in the King's Bench. Hill paid the damages recovered against him, and satisfaction was entered. Then Corbett was taken in execution, when he and the other two brought an *audita querela*, setting forth the whole matter, with an averment that the said assault and battery in London and Hertford was the same assault. And by Justices Jones, Croke, and Barkeley, the *audita querela* lies; for although for the same assault the plaintiff may have several *actions* and recover, yet when a recovery is had against one, and *satisfaction*, he cannot have another *satisfaction;* just as where an obligation is made jointly and severally, and the obligee sues in the Common Bench one by several writ, and recovers, and afterwards sues another in the King's Bench upon the same obligation, nevertheless if one of them makes satisfaction, the other shall have an *audita querela* to avoid the execution; for the plaintiff cannot have *nisi unica satisfactio.* So here the plaintiff can have several *recoveries*, but if one *satisfy*, the other shall have *audita querela* to set aside the execution against him."

---

* Hobart, 66.

† Sir W. Jones, 377; sometimes cited as first Jones, to distinguish it from Sir Thomas Jones, in the subsequent reign cited as second Jones.

Many American cases decide or declare this explicitly.*

So in the recent English case of *Cooper* v. *Shepherd*,† the former judgment had been paid, although that fact is by mistake omitted in the marginal note. The court say, " The plaintiff, after he has once received the full value, is not entitled to further compensation in respect to the same loss, and according to the doctrine of cases cited in the argument, by a former recovery in trover *and payment of the damages*, the plaintiff's right of property is barred, and the property vested in the defendant in that action. See *Adams* v. *Broughton* (2 Strange, 1078), and Jenkins, 4th Century, Case 88, p. 189, where it is laid down in trespass against B. for taking a horse, A. recovers damages by this recovery and *execution done thereon*, the property in the horse is vested in B., *solutio pretii emptionis loco habetur.*"

*On the third question.* It is submitted that the judgment against the sheriff is conclusive upon Lovejoy & Co. The sheriff was their agent. They directed the attachment and sale; they gave the bond of indemnity; they defended the suit against him, and were the real defendants in it; they paid the attorneys and counsel, and had the exclusive control of the defence. Privies, as well as parties, are concluded by a judgment. Lovejoy & Co. cannot, therefore, again contest the case on its original merits.‡

Mr. Justice MILLER delivered the opinion of the court:

The record before us raises three questions, all of which depend upon the principles of the common law exclusively for their solution.

We will consider them in the order in which they naturally arose on the trial, and in which also they have been argued.

---

* See *Livingston* v. *Bishop*, 1 Johnson, 290; *Sanderson* v. *Caldwell*, 2 Aiken, 195; *Osterhout* v. *Roberts*, 8 Cowen, 43; *Blann* v. *Crochern*, 20 Alabama, 320; *Knott* v. *Cunningham*, 2 Sneed, 204.

† 3 Manning, Grainger & Scott, 266.

‡ *Rapelye* v. *Prince*, 4 Hill, 119, 123; *Calkins* v. *Allerton*, 3 Barbour, 173; *Glass* v. *Nichols*, 35 Maine, 328; *Warfield* v. *Davis*, 14 B. Monroe, 41, 42; *Castle* v. *Noyes*, 14 New York, 329; *Farnsworth* v. *Arnold*, 3 Sneed, 252; *Griffin* v. *Reynolds*, 17 Howard, 609.

1. *Did the defendants, in giving a bond of indemnity to the sheriff, thereby become liable as joint trespassers with him in the proceedings under the attachment?*

The question arises upon the hypothesis that a writ of attachment was issued in favor of the present defendants against one O. H. Pratt, which was wrongfully levied by the sheriff on property of the present plaintiff. The bond of indemnity given by the present defendants recites upon its face that the sheriff has already levied the attachment; and there is nothing in the case, except the bond, to show that in making the levy, or in anything done by the sheriff prior to the giving of the bond, he acted under the direction or instruction of the defendants, or at their request. That the attaching creditor is not answerable for the act of the officer, unless he in some manner interferes so as to make himself liable, must be conceded. And unless the defendants have so interfered in this case as to incur this responsibility the action cannot be sustained.

It is contended by counsel that a trespass cannot be ratified like a contract so as to make the party liable *ab initio.* But it is not necessary to decide, in this case, whether the defendants by giving the bond became liable for what had been done previous to that time. It is sufficient, if they become liable for what was done by the sheriff after they gave the instrument. The trespass complained of was a continuing trespass, and consisted of a series of proceedings, ending in the sale of the plaintiff's property under execution. At the time the bond was given, the sheriff had merely taken possession of the goods under the attachment. No great injury had, probably, been done. The demand for indemnity, and the giving of it by the defendants, proceeded upon the supposition that the sheriff would without it go no further in that direction, but would give up the property to the claimant, the present plaintiff, and make his peace on the best terms he could. By the present statute of Iowa he had a right to do this, if the plaintiff in attachment refused to assume the hazard of indemnifying him. And if there were no such statute, he had a right to deliver the property to the

claimant, and risk a suit by the plaintiff in attachment, rather than a contest with a rightful claimant of the goods.

The giving of the bond by the present defendants must, therefore, be. held equivalent to a personal interference in the course of the proceeding, by directing or requesting the sheriff to hold the goods as if they were the property of the defendants in attachment. In doing this they assumed the direction and control of the sheriff's future action, so far as it might constitute a trespass, and they became to that extent the principals, and he their agent in the transaction. This made them responsible for the continuance of the wrongful possession, and for the sale and conversion of the goods; in other words, for all the real damages which plaintiff sustained.

The first question must, therefore, be answered in the affirmative,

2. *Did the plaintiff, by suing Hayden, the sheriff, alone, recovering judgment for about six thousand dollars, and receiving from him eight hundred and thirty dollars on the said judgment, thereby preclude himself from maintaining this suit against these defendants for the same trespass? Is the judgment, or the judgment and part payment, in that case a bar to this action?*

Parke, Baron, in the case of *King* v. *Hoare*,* speaking in reference to the same proposition in its application to actions on joint contracts, says, in 1846, that it is remarkable that the question should never have been decided in England. It is equally remarkable that the proposition here presented should be an open question at this day.

The faithful and exhausting research of counsel, in this case, shows that there are conflicting authorities, not only on the main proposition, but on several incidental and collateral points closely connected with it. Two propositions, however, seem to be conceded by all the authorities, which bear with more or less force on the main question, and which may as well be stated here.

1. That persons engaged in committing the same trespass

---

* 13 Meeson & Welsby, 502.

are joint and several trespassers, and not joint trespassers exclusively. Like persons liable on a joint and several contract, they may be all sued in one action; or one may be sued alone, and cannot plead the nonjoinder of the others in abatement; and so far is the doctrine of several liability carried, that the defendants, where more than one are sued in the same action, may sever in their pleas, and the jury may find several verdicts, and on several verdicts of guilty may assess different sums as damages.

2. That no matter how many judgments may be obtained for the same trespass, or what the varying amounts of those judgments, the acceptance of satisfaction of any one of them by the plaintiff is a satisfaction of all the others, except the costs, and is a bar to any other action for the same cause.

In the latest English case upon the principal question, namely, *Buckland* v. *Johnson,*\* Jervis, C. J., holds the former judgment against the son, although fruitless, to be a bar to the second suit against the father for the same goods, upon the ground that by the former judgment the property in the goods was vested in the defendant in that action. As this is the latest case in the English courts which expressly decides the point, it may, perhaps, be received as the English doctrine. But this concession must be made with some hesitation in view of opinions expressed in other cases decided in the same country. In the very case in which that judgment is rendered, the chief justice takes occasion to correct what he supposes to be an erroneous statement of Tindal, C. J., in *Cooper* v. *Shepherd,* to the effect, " that, according to the doctrine of the cases which were cited in argument by a former recovery in trover *and payment of damages,* the plaintiff's right of property vests in the defendant in that action."

It was, therefore, the opinion of C. J. Tindal, that *payment of the damages recovered* is essential to vest the property in defendant, and this only a few years before the case of *John son* v. *Buckland* was decided. That case was decided in 1854, and mainly on the authority of *Brown* v. *Wootton,* reported in

---

\* 15 C. B. 145.

Yelverton, as also by Croke, J. The reason for the decision, as given by Popham, C. J., is thus stated in the latter book: "In the cause of action being against divers, for which damages uncertain are recoverable, and the plaintiff having judgment against one person for damages certain, that which was uncertain before, is reduced *in rem judicatam*, and to certainty, which takes away the action against others." If the only object, or indeed the principal object, in obtaining a judgment in trespass, was to render certain the extent of plaintiff's injuries, or the amount of damages which would compensate for those injuries, we might be able to comprehend the force of this logic. But as it is the purpose of the law, and the main purpose for which courts of justice are instituted, to procure satisfaction for these injuries, we do not see the sequence in the reasoning of the learned judge.

*Brown* v. *Wootton* was decided in Trinity Term, 3 James I. Prior to that time, the law had been thought to be the other way.* In *Claxton* v. *Swift*,† Shower said, "it was never pretended, until the case of *Brown* v. *Wootton*, that a bare judgment should be a bar."

In *Cocke* v. *Jenner*, reported by Hobart, and which was in Trinity Term, 12 James I (only nine years after *Brown* v. *Wootton*), the question arose on a release of one joint trespasser, which was held to be a bar to a suit against the other, on the ground that it was equivalent to satisfaction; yet the language of the report leaves a strong impression that it was the opinion of the court that several judgments might be had, and that only satisfaction, or its equivalent, would bar proceedings against all who were liable. And the case of *Corbett* v. *Barnes*, cited from Sir W. Jones (time of Charles the First), which was on *audita querela*, while it holds that only one satisfaction can be had, implies clearly that several judgments may be rendered against joint trespassers. Indeed, that very case was where one judgment had been rendered in the King's Bench against one, and in the Common Pleas against three others, for the same trespass.

---

* See Brooke's Abridgment, Pl. 98; Morton's Case, Cro. Eliz. 30.
† 2 Shower, 494.

These cases show that, after as well as before the case of *Brown* v. *Wootton*, the law was supposed, by some of the ablest judges in England, to be otherwise than what it decides; and we know of no case in which it was followed in England as implicit authority, until *Buckland* v. *Johnson*, in 1854.

The rule in that case has been defended on two grounds, and on one or both of these it must be sustained, if at all. The first of these is, that the uncertain claim for damages before judgment has, by the principle of *transit in rem judicatum*, become merged into a judgment which is of a higher nature. This principle, however, can only be applicable to parties to the judgment; for as to the other parties who may be liable, it is not true that plaintiff has acquired a security of any higher nature than he had before. Nor has he, as to them, been in anywise benefited or advanced towards procuring satisfaction for his damages, by such judgment.

This is now generally admitted to be the true rule on this subject, in cases of persons jointly and severally liable on contracts; and no reason is perceived why joint trespassers should be placed in a better condition. As remarked by Lord Ellenborough, in *Drake* v. *Mitchell*,* "A judgment recovered in any form of action, is still but a security for the original cause of action, until it be made productive in satisfaction to the party; and, therefore, till then, it cannot operate to change any other collateral concurrent remedy which the party may have."

The second ground on which the rule is defended is, that by the judgment against one joint trespasser, the title of the property concerned is vested in the defendant in that action, and therefore no suit can afterwards be maintained by the former owner for the value of that property, or for any injury done to it.

This principle can have no application to trespassers against the person, nor to injuries to property, real or personal, unaccompanied by conversion or change of possession. Nor is the principle admitted in regard to conversions of

---

* 3 East, 258.

personal property.    Prior to *Brown* v. *Wootton*, the English
doctrine seems to have been the other way, as shown by
Kent, in his Commentaries,* referring to Shepherd's Touch-
stone,† and Jenkins.‡

We have thus far confined ourselves to the examination
of the English authorities, and the principles discussed in
them, and we are forced to the conclusion that even at this
day the doctrine there is neither well settled nor placed on
any satisfactory ground.

In turning our attention to the American cases, we have
been able to find but two in which the point directly in issue
has been ruled in favor of the bar of the former judgment;
although there are some other cases which hold that the
right of property is transferred by the judgment.    The first
of these two cases is *Wilkes* v. *Jackson.*§    This was an early
case in the Court of Appeals of Virginia, which seems to have
passed without much consideration, and was mainly rested
on the judgment of the same court in a former case, which
does not appear to sustain it.

The other is the Rhode Island case of *Hunt* v. *Bates.*‖    It
is a very recent case, decided in 1862; but the absence of
any other reasoning than a mere recapitulation of the Eng-
lish cases, and the remark that upon their authority the
court is obliged to rest its decision, deprives it of any other
weight than what should be attached to those cases.    This
we have already considered.

In addition to this, it has been decided in South Carolina
and Pennsylvania, that the recovery of a judgment for the
value of the goods converted, transfers the title to the de-
fendant.    *Rogers* v. *Moore;*¶    *Floyd* v. *Brown.***

On the other hand, in the case of *Livingston* v. *Bishop*,††  in
the Supreme Court of New York, in 1806, Kent, C. J., over-
rules *Brown* v. *Wootton*, and holds that judgment alone is not
a bar.

---

* 2 Kent, 388.          † Title "Gift."          ‡ Page 109, Case 88.
§ 2 Henning & Munford, 355.          ‖ 7 Rhode Island, 217.
¶ 1 Rice, 60.          ** 1 Rawle, 121.          †† 1 Johnson, 290.

In *Sheldon* v. *Kibbe*,* decided in 1819, in the Supreme Court of Connecticut, the court, by Hosmer, C. J., enters into an elaborate examination of the authorities, and a full consideration of the question on principle, and lays down the doctrine that neither a judgment, nor the taking of the body of the defendant in execution, will bar a second action against a co-trespasser. Nothing short of satisfaction or release can have that effect.

In *Sanderson* v. *Caldwell*,† in the Supreme Court of Vermont, in 1826, it is held that neither judgment, nor issuing execution, nor anything short of satisfaction, is a bar to a second suit brought against another joint trespasser.

*Osterhout* v. *Roberts*,‡ a year later, in the Supreme Court of New York, was a plea that defendant's son had been sued, had a judgment rendered against him, and had been taken in execution and imprisoned sixty days for the same trespass. Yet the plea was held bad. The trespass was for taking a watch.

In *Elliott* v. *Porter*,§ Robertson, C. J., of the Court of Appeals of Kentucky, examines the whole subject fully, both on principle and authority, and holds that the first judgment is no bar, and that the title to the property does not pass by judgment in trespass or trover. This case is affirmed by the same court, in *Sharp* v. *Gray*.||

*Blann* v. *Cochern*, in Alabama,¶ was an action of trespass. The defendant pleaded a former recovery against a co-trespasser, and payment of the judgment and costs so recovered, to the clerk of the court. But the plea was held bad, because it was not averred that it was accepted by the plaintiff.

In *Knott* v. *Cunningham*,** the Supreme Court of Tennessee held that a former judgment against one tort-feasor, was no bar to a suit against another, for the same tort, without satisfaction.

In *Page* v. *Freeman*,†† the Supreme Court of Missouri held the same doctrine.

---

* 3 Connecticut, 214.    † 2 Aiken, 195.    ‡ 8 Cowen, 43.
§ 5 Dana, 299.    || 5 B. Monroe, 4.    ¶ 20 Alabama, 320.
** 2 Sneed, 204.    †† 19 Missouri, 421.

In *Floyd* v. *Browne*,* Gibson, C. J., of Pennsylvania, while holding that after a judgment in trover against two trespassers without satisfaction, plaintiff cannot bring assumpsit against another trespasser, uses this language: "A plaintiff is not compelled to elect between actions that are consistent with each other. Separate actions against a number who are severally liable for the same thing, or against the same defendant on distinct securities for the same debt or duty, are concurrent remedies. Trespass is, in its nature, joint and several, and in separate actions against joint trespassers, being consistent with each other, nothing but satisfaction by one will discharge the rest." Trover and assumpsit, however, he holds to be inconsistent remedies.

If we turn from this examination of adjudged cases, which largely preponderate in favor of the doctrine that a judgment, without satisfaction, is no bar, to look at the question in the light of reason, that doctrine commends itself to us still more strongly. The whole theory of the opposite view is based upon technical, artificial, and unsatisfactory reasoning.

We have already stated the only two principles upon which it rests. We apprehend that no sound jurist would attempt, at this day, to defend it solely on the ground of *transit in rem judicatum*. For while this principle, as that other rule, that no man shall be twice vexed for the same cause of action, may well be applied in the case of a second suit against the same trespasser, we do not perceive its force when applied to a suit brought for the first time against another trespasser in the same matter.

In reference to the doctrine that the judgment alone vests the title of the property converted, in the defendant, we have seen that it is not sustained by the weight of authorities in this country. It is equally incapable of being maintained on principle.

The property which was mine, has been taken from me by fraud or violence. In order to procure redress, I must

---

* 1 Rawle, 125.

sue the wrong-doer in a court of law.  But, instead of getting justice or remedy, I am told that by the very act of obtaining a judgment—a decision that I am entitled to the relief I ask—the property, which before was mine, has become that of the man who did me the wrong.  In other words, the law, without having given me satisfaction for my wrong, takes from me that which was mine, and gives it to the wrong-doer.  It is sufficient to state the proposition to show its injustice.

It is said that the judgment represents the price of the property, and as plaintiff has the judgment, the defendant should have the property.  But if the judgment does represent the price of the goods, does it follow that the defendant shall have the property before he has paid that price?  The payment of the price and the transfer of the property are, in the ordinary contract of sale, concurrent acts.*

But in all such cases, what has the defendant in such second suit done to discharge himself from the obligation which the law imposes upon him, to make compensation?  His liability must remain, in morals and on principle, until he does this.  The judgment against his co-trespasser does not affect him so as to release him on any equitable consideration.  It may be said that neither does the satisfaction by his co-trespasser, or a release to his co-trespasser do this; and that is true.  But when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages.  But it is not easy to see how he is so affected, until he has received full satisfaction, or that which the law must consider as such.

We are, therefore, of opinion that nothing short of satisfaction, or its equivalent, can make good a plea of former judgment in trespass, offered as a bar in an action against another joint trespasser, who was not party to the first judgment.

* 2 Kent, 388-9; Greenleaf on Evidence, § 533; Hyde *v.* Noble, 13 New Hampshire, 500; Hepburn *v.* Sewell, 5 Harris & Johnson, 211.

The second question must, therefore, be answered in the negative.

3. *Is the judgment of plaintiff, against the sheriff, Hayden, conclusive against the defendants in this action?*

The facts on which this proposition is based, are the giving of the bond of indemnity by the defendants, and that Hayden, when sued, notified them of the suit, and called on them to defend it; that they did employ counsel to defend it, and that the counsel so employed had exclusive control of the defence of the suit.

The legal facts necessary to enable plaintiff to recover in the present suit are, first, his title to the goods which had been converted; second, the value of those goods; and, third, the participation of the defendants in the conversion. The latter point, we have already seen, is established by the indemnifying bond to the sheriff. Does the record of the judgment against Hayden conclusively establish the other two points, under the circumstances just stated?

We are of opinion that it does.

We have already shown that the effect of giving the bond was to make defendants principals in the transaction, and that so far as the action of the sheriff after that was a trespass, it was directed by them, and was for their benefit. With a just appreciation of their relations to each other in the transaction, he called on them, when sued, to assume the defence; and they did so. They were defending their own acts, although the suit was in the sheriff's name. They had full right to make all defence there, which they could make here. They could adduce witnesses, and cross-examine those of plaintiff, and could have taken an appeal. The case is wanting in none of the elements so happily stated by Mr. Greenleaf,* as rendering a former judgment conclusive in a second suit. "Justice requires," he says, "that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, and between the same

---

* 1 Greenleaf on Evidence, § 522-3.

parties, should be closed forever.   It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he is a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger, he may well be bound.   Under the term parties, in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defence, or to control the proceedings; and to appeal from the judgment.   This right involves, also, the right to adduce testimony, and to cross-examine the witnesses adduced on the other side.   Persons not having these rights are strangers to the cause.   But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings."   "The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is, that they are identified with him in interest; and wherever this identity is found to exist, all are alike concluded."   The authorities cited by the learned author fully sustain these propositions.

The present case comes within them, and must be governed by them.   In addition, various cases have been examined, which affirm the conclusiveness of former judgments, under circumstances which we are unable to distinguish, in principle, from the one before us, and in several instances the analogy in the facts is perfect.   They are presented in the note below.*

This last question must, therefore, be answered in the affirmative.

As the rulings of the Circuit Court were in accordance with the principles here decided, the judgment of that court must be

AFFIRMED, WITH COSTS.

* Ferris v. Arden, Cro. Eliz. 667; Kennedy v. Cope, Douglas, 517; White v. Philbrick, 5 Greenleaf, 147; Roberts v. Prince, 4 Hill, 19; Calkens v. Allerton, 3 Barbour S. C. 173; Glass v. Nichols, 35 Maine, 328; Castle v. Noyes, 14 New York, 329; Warfield v. Davis, 14 B. Monro, 41.