## Ridgeway v. Sayre Electric Co., Appellant.

*Negligence—Electric companies—Telephone companies—Use of poles by both companies—Telephone lineman—Death—Contact with electric company's wires—Alleged joint tort-feasors—Release —Effect—Telephone beneficial fund—Payment—Action against electric company—Contributory negligence—Case for jury.*

1. In an action for personal injuries the defendant cannot show either as a bar to the action or in reduction of damages that the

injured person received or is entitled to receive compensation for his injury in the form of insurance or otherwise.

2. While the release of one joint tort-feasor releases all, the release of one joint tort-feasor of an action sounding in contract will not release another joint tort-feasor of an action sounding in tort, although the tort may have given rise to a cause of action upon the contract.

3. Where in an action against an electric company to recover for the death of plaintiff's husband, it appeared that deceased was a lineman in the employ of a telephone company, and that while engaged in repairing the telephone company's line his death was occasioned by his coming in contact with a defectively insulated wire of the defendant which was strung on the same pole and close to the telephone company's line, the fact that the telephone company and the defendant might have been joint tort-feasors and that plaintiff had released the telephone company of liability did not preclude her right to recover from the defendant where it appeared that the plaintiff had received certain insurance money from the telephone company, under its insurance plan, and that the release was given in acknowledgment of receipt of the insurance money, although its terms expressly covered any claims which plaintiff might have against the telephone company for the death of her husband.

4. In such case although the break in the insulation of defendant's wire was plainly visible, it could not be said as a matter of law that deceased necessarily had notice of the defective condition of the insulation from his examination of the wires of the telephone company, as it did not appear that it was his duty to examine defendant's wires or that either he or the telephone company had knowledge that the wire which caused the injury was carrying a high voltage, and the case was properly submitted to the jury.

Argued Mar. 12, 1917. Appeal, No. 60, Jan. T., 1917, by defendant, from judgment of C. P. Bradford Co., Sept. T., 1914, No. 119, on verdict for plaintiff, in case of Elsie E. Ridgeway v. Sayre Electric Company. Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before MAXWELL, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,000 and judgment thereon. Defendant appealed.

*Errors assigned* were answers to points, instructions to the jury, in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*J. Roy Lilley,* with him *William P. Wilson,* for appellant.—The Bell Telephone Company was a joint tortfeasor with the defendant; the release of the telephone company, therefore, released the defendant of liability: Seither v. Phila. Traction Co., 125 Pa. 397; Peterson v. Wiggins, 230 Pa. 631; City Electric St. Ry. Co. v. Conery, 31 L. R. A. 570; Goodman v. Coal Twp., 206 Pa. 621; Wiest v. Electric Traction Co., 200 Pa. 148; Chicago & Western Ind. R. R. Co. et al. v. Marshall, 75 N. E. Repr. 973; McKay & Roche v. Southern Bell T. & T. Co. et al., 31 L. R. A. 589; Graves v. City & Suburban Tel. Assn., 132 Fed. Repr. 387; Richardson et al. v. Southern Idaho Water Power Co. et al., 209 Fed. Repr. 949; Conway v. Pottsville Union Traction Co., 253 Pa. 211; Smith v. Roydhouse, Arey & Co., 244 Pa. 474; Leddy v. Barney, 2 N. E. Repr. 107; Carpenter v. W. H. McElwain Co., 97 Atl. Repr. 560; Cleveland, Cincinnati Chicago & St. Louis Ry. Co. v. Hilligoss, 86 N. E. Repr. 485; Economy Light & Power Co. et al. v. Hilligoss, 68 N. E. Repr. 72; State to use of Cox et al. v. Maryland Elec. Rys. Co., 95 Atl. Repr. 43; Johnson v. Phila. & Reading R. R. Co., 163 Pa. 127; Ringle v. Penna. R. R. Co., 164 Pa. 529; Reese v. Penna. R. R. Co., 229 Pa. 340; Jack v. Penna. R. R. Co., 43 Pa. Superior Ct. 337.

The deceased was guilty of contributory negligence as a matter of law: Judge v. Narragansett Elec. Lighting Co., 49 Atl. Repr. 961; Reed v. Norristown Electric Light & Power Co., 223 Pa. 591; Hart v. Allegheny County Light Co., 201 Pa. 234; Haertel v. Penna. Light & Power Co., 219 Pa. 640; Myers v. Edison Elec. Illuminating Co., 225 Pa. 387.

*John C. Ingham,* with him *A. G. Rutherford,* for appellee.—There was no contributory negligence on the part of the defendant.

The release of the Bell Telephone Company was no defense to the action.

There were in this case two claims, two separate causes of action, each entirely independent of the other, one arising out of contract and the other out of tort: North Penna. R. R. Co. v. Kirk, 90 Pa. 15; Coulter v. Pine Twp., 164 Pa. 543; Dempsey v. Balt. & Ohio R. R. Co., 219 Fed. Repr. 619; Gray v. Boston Elevated Ry. Co., 102 N. E. Repr. 71; Clune v. Ristine, 94 Fed. Repr. 745; Brabham v. Balt. & Ohio R. R. Co., 220 Fed. Repr. 35.

OPINION BY MR. JUSTICE FRAZER, June 30, 1917:

Plaintiff sued to recover damages for the death of her husband caused by his coming in contact with a defectively insulated wire belonging to defendant company, while he was engaged in inspecting a cable of the Bell Telephone Company, his employer. The trial resulted in a verdict for plaintiff and judgment thereon, from which defendant appealed.

The Bell Telephone Company and the Sayre Electric Company, the defendant, by mutual agreement, together used a line of poles for carrying their respective wires, the upper ten feet of the poles being allotted to the telephone company, and the lower part to the electric company, each maintaining its wires entirely independent of the line of the other. Defendant had on its line a number of wires for conveying electric current for lighting and power purposes, one of which carried at least approximately 2,300 volts. The Bell Company, on the part of the poles apportioned to its use, placed cross-arms in the usual manner, and below these strung a lead cable, containing a large number of wires, which was supported by a steel messenger wire hung at a distance of 4 feet 4 inches above the wires of defendant company, except at the pole near which the accident happened, being the one

at the end of the line used by the companies jointly, where, for some reason, the wire was placed lower and about 2 feet 4 inches from the wires of defendant.

Deceased, an expert cable repairman, upon notice to the telephone company of trouble in its line, was sent to Sayre to examine the lead cable and repair defects. Upon arrival in that town a preliminary examination was made of the line from the ground to ascertain its connections and terminus, this being the first time deceased had worked in that locality, and the following morning, June 27, 1913, the work of inspection was commenced. This work required deceased to travel along the wire on a device, equipped with a suspended seat and known as a buggy, which moved from pole to pole, using the messenger wire as a track. To properly examine and inspect wires the operator is obliged to lean sidewise until his head and body are level with the cable, and while in this position support himself by throwing one arm over the messenger wire. Deceased with his helper worked during the day along the line until six o'clock in the evening, when he reached the point where the distance between the wires of the two companies decreased to 2 feet 4 inches, and his foot came in contact with defendant's high voltage wire at a place where the insulation was defective, his body immediately completing the circuit between the two wires, and causing his death.

The main question raised by this appeal is the effect of a release given by plaintiff to the Bell Telephone Company. That company maintains on behalf of its employees a fund described under what is termed "a plan for the payment of pensions and accident and sickness disability benefits to employees and of life insurance to their beneficiaries at time of death," the object being to provide "for the payment of definite amounts to its employees when they are disabled by accident or sickness or when they are retired from service, or, in the event of death, to their dependent relatives." In the life insurance branch of this plan, under which the payment and

release in question were made and given, there is a
provision that "all employees......shall be entitled to in-
surance against death by accident occurring in and due
to the performance of work for the company.  This in-
surance shall be paid to the employees' beneficiaries as
hereinafter provided, and shall equal three years' aver-
age wages as hereinafter defined, but in no case shall it
exceed $5,000."  There is no provision or condition that
payments are in any way dependent upon the question of
negligence, either on the part of the company or on the
part of the employee.  The entire plan contemplates the
creation of a benefit fund and insurance, and is expressly
so termed.  True, it contains a provision that in case of
injury or death the employee or his representatives "may
elect to accept such benefits or to prosecute such claim
as he or they have at law against the company," and, in
case a "claim otherwise than hereunder be presented or
suit brought," the employee, or his beneficiaries "shall not
be entitled to any payment from the Employees' Benefit
Fund on account of such injury or death unless such
claim shall be withdrawn or such suit discontinued be-
fore trial thereof or decision rendered therein."  The re-
lease expressly discharges "the fund established under
the plan for Employees' Pension, Disability Benefits and
Insurance, and the Bell Telephone Company of Penn-
sylvania" from claims or actions arising out of the death
of plaintiff's husband.

Pursuant to a provision in the insurance fund plan, a
certain amount was advanced plaintiff to pay funeral
expenses, and the balance paid upon execution of the re-
lease, making a total payment of $2,808, exactly three
years' wages of plaintiff's husband at $18 a week.  There
was no sum included in the release intended as a pay-
ment on account of other claims plaintiff might have by
reason of alleged negligence of the telephone company.
On the contrary, under the express provision of the in-
surance fund plan, the very fact of making claim "other-

wise than hereunder" would have forfeited plaintiff's right to benefits unless such claim were withdrawn.

The contention of defendant is that the negligence of the telephone company concurred with that of defendant, that the cause of action was a joint tort, and the release of one was a bar to further proceeding against the other. The rule is that a release of one joint tort-feasor releases all. This is based on the theory that the injured person has but a single claim and one cause of action, and while he may sue separately as many persons as were connected with the accident, he can obtain but one satisfaction of the claim; consequently, if the release offered in evidence was accepted by plaintiff in satisfaction of her claim for injuries sustained by the death of her husband through the joint negligence of defendant and the telephone company, her action is barred.

In determining this contention, the primary matter to be considered is whether there was joint negligence of the party released: Conway v. Pottsville Union Traction Co., 253 Pa. 211. Before reaching this point in the present case, we are met with the question whether or not, in fact, this proceeding is based on the same cause of action which was the subject-matter of the release. If not, the question whether there was joint negligence between the two companies need not be considered. As stated above, the claim of plaintiff against the telephone company was not a claim for negligence causing the death of her husband. Under the insurance plan plaintiff had the right to elect whether she would bring such action against the telephone company or accept the benefits of the insurance fund. She elected to adopt the latter course. The release, as executed, is broad in its scope and includes a release of claims of any nature that might exist because of the death of her husband, hence there is no doubt of its being an effectual bar to a subsequent action against the telephone company for alleged negligence on its part. Such provision, however, does not necessarily convert the acquittance into a compro-

mise of a claim for damages for tort so far as liability of third persons is concerned. The discharge of such claim was a mere incident to the main purpose of the release, namely, to acknowledge receipt of the benefits due under the insurance fund—a claim solely on the contract of insurance resulting from the relation of employer and employee. No claim was made against the telephone company for negligence, and, if there had been, such demand would have barred plaintiff's right to the insurance fund. The amount so paid was the exact amount to which plaintiff was entitled under the rules relating to the distribution of the fund, and the settlement was without bearing on the question of defendant's liability for negligence, except in so far as the release of such claim was included within the broad general terms of the acquittance. The cause of action which was the subject-matter of the release was the claim on the insurance fund, and, in an action for personal injuries, it has been held uniformly that the defendant cannot show, either as a bar to the action or in reduction of damages, that the injured person received, or is entitled to receive, compensation for his injuries in the form of insurance or otherwise: North Penna. R. R. Co. v. Kirk, 90 Pa. 15; Coulter v. Pine Township, 164 Pa. 543; Stahler v. Phila. & Reading Ry. Co., 199 Pa. 383; Clune v. Ristine, 94 Fed. Repr. 745; Dempsey v. Balt. & Ohio R. R. Co., 219 Fed. Repr. 619. The payment on the policy in such case is not in settlement of the claim for damages, or as the value of the injury, but is on the basis of a contract and in consideration of the receipt of premiums. The payment here was the exact amount of the insurance fund, as stated above, and was made without reference to, or in anywise concerning, an alleged tort; nor is there evidence tending to show the parties dealt otherwise than on a contractual basis, without reference to questions of negligence or responsibility for the action. It cannot be said therefore that plaintiff has obtained satisfaction of her claim for damages from one tort-feasor and hence the reason for

the release of the other does not exist. In this view of the case, consideration of the question whether defendant and the Bell Telephone Company were joint tortfeasors becomes unnecessary.

Defendant also questions the sufficiency of the evidence of negligence, and argues the carelessness was wholly on the part of the telephone company in constructing its messenger wire in such close proximity to the high voltage wire of defendant as to permit a workman to come in contact with the latter, and by reason of such disregard of proper care the telephone company's action was the proximate cause of the accident. Whether that company's negligence was the proximate cause of the injury was fairly submitted to the jury and found against the defendant. We find no evidence of an agreement or understanding between the two companies requiring the cable or wires of the telephone company to be maintained a fixed distance above the wires of the electric company, other than what may be inferred from the fact they were so constructed, except at the place where the accident happened. If such construction be evidence of an agreement, then we have the same evidence that the position of the wire at the point where the accident happened, which was 2 feet 4 inches above defendant's wires, was also located by agreement. This wire was put in place in 1908, and remained in the same position until the time of the accident in 1913, and, so far as the evidence goes, we find nothing tending to show the telephone company was not entitled to use any part of the ten feet of space allotted to it. The trial judge instructed the jury defendant was obliged, in view of the conditions existing in plain view for so long a time, to see that its wires were in such reasonably safe condition as to afford protection from injury of persons coming in contact with them in the course of their employment. This instruction is in accordance with a number of recent cases, and is substantially the language used in Fitzgerald v. Edison Electric Illuminating Co., 200 Pa.

540; Yeager *v.* Edison Electric Co., 242 Pa. 101. In the latter case we said (p. 104) : "Prudence requires those in control of a deadly current of electricity to exercise the highest degree of care in protecting the wires at points where persons in the course of their lawful employment are liable to come in contact with them." Defendant had constructive, if not actual, notice of the method used by the telephone company in repairing its wires, and, accordingly, was aware that employees of the latter company were likely, in the discharge of their duties, to do just what deceased did in this case; and, under such circumstances, defendant was bound to use the highest degree of care practicable to avoid injuring them. Whether it performed this duty, in view of the testimony that the insulation had been in a defective condition for nearly a year, that at the time of the accident it looked ragged and the defects were discernible from the ground, that the insulation used was at best ineffective and that the proximity of the wires at the place where the accident happened was in itself an unsafe construction, was for the jury.

Deceased's contributory negligence was also for the jury. Although the break in the insulation of defendant's wire was visible from the ground, and deceased passed the place of the accident in the course of his inspection of the telephone wires from the ground the preceding day, the object of his inspection was not to ascertain the condition of the defendant's wires, but those of his company. We cannot say, as a matter of law, that deceased must necessarily have noticed the defective insulation of defendant's wire in the course of his examination of the wires of his company. There is also evidence that deceased, from his position on the buggy, might readily have seen a break in the insulation of the wire immediately below him had he taken the precaution to look, and it cannot be questioned seriously that, as an experienced lineman, he was aware of the danger which would result from contact with a naked high voltage

wire of an electric company.  We cannot say, as a matter of law, however, that deceased was negligent in failing to observe the defective insulation on a wire he had no special reason to examine closely.  Nor is there evidence that either he or the telephone company had knowledge of the particular wire, or wires, of defendant carrying the high voltage.  While deceased was bound to know the danger of his position and to take proper care to guard against coming in contact with wires he knew carried a dangerous current, Haertel v. Penna. Light & Power Co., 219 Pa. 640, the questions whether he saw, or should have seen, the faulty insulation, in view of the circumstances and of the position in which he was obliged to work, and whether he took proper care for his safety, were for the jury.

The judgment is affirmed.