**SOUTHWESTERN GAS & ELECTRIC CO.
v. WILLIAMS.***

**No. 7518.**

Circuit Court of Appeals, Fifth Circuit.
March 2, 1935.

Rehearing Denied March 26, 1935.

*Writ of certiorari denied 55 S. Ct. 827, 79 L. Ed. ——.

Richard L. Arnold and David C. Arnold, both of Texarkana, Ark., Alfred M. John and A. C. Wood, both of Houston, Tex., for appellant.

S. P. Jones and Franklin Jones, both of Marshall, Tex., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

W. M. Williams sued the Southwestern Gas & Electric Company to recover damages for personal injuries resulting from his coming in contact with an uninsulated electric light wire belonging to that company, while he was engaged in stringing a telephone wire along the rear wall of a building for his employer, the Postal Telegraph-Cable Company. Besides the general issue, the defendant pleaded that the plaintiff after receiving his injuries released his employer, and thereby released also the defendant, from all liability for damages; that plaintiff was injured while he was trespassing upon the property of the owner of the building, and was guilty of contributory negligence. The trial resulted in a verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the denial of its motion for the peremptory instruction, which was based on all the grounds of defense interposed except that of contributory negligence. It also assigns as error a charge of the court withdrawing from the jury and rejecting the defense of release. Assuming that the issue of trespass was for the jury to decide, no fault is found with the way in which it was submitted to them. The court's charges on negligence and contributory negligence are not objected to, but complaint is made of the court's refusal to give additional requested charges on those issues.

The accident occurred in August, 1932. A four-story building, known as the O'Dwyer building, abutted in the rear on an alley. It was erected in 1926, but had been vacant for two years. Before it became vacant the Postal Company placed eight brackets along the rear wall, added sixteen knobs each capable of holding four telephone wires, and installed, one above the other, at least eight telephone wires. There was tes-

SIBLEY, Circuit Judge, dissenting.

timony that this was done by permission of the manager of the building, and, although the latter denied giving his consent, it is undisputed that the Postal Company's wires remained as they had been placed in plain view up to the time of the accident. The defendant maintained poles across the alley for carrying its electric light wires; and from one of them installed several wires carrying 110 volts for the purpose of furnishing light to the building while it was occupied, and after it became vacant cut those wires where they entered, but left them attached to, the building about 25 feet above the ground and some 14 inches below the position of the lowest telephone wire. Its employee who disconnected the light wires testified that 3½ or 4 inches at the ends were uninsulated; that he rolled each end up and taped it to the service wire leading from the pole. It is not clear whether he meant to say that he taped the bare ends, or only that the insulated parts of the wires were fastened together by tape. Photographs offered in evidence rather indicate that the bare ends were left untaped. However this may be, it is conceded that the electric light wires were not inspected by the defendant from the time they were cut until after the plaintiff was injured. At the time of the accident the plaintiff was standing on a ladder which was leaning against the rear wall of the O'Dwyer building over or alongside the uninsulated ends of defendant's wires, and was engaged in attaching a new telephone wire to a bracket on which the Postal Company's wires were strung. While in this position, and while holding onto a fire escape with one hand, he unintentionally let his other hand come into contact with the bare end of one of defendant's light wires and received a shock of electricity which caused him to fall off the ladder to the ground, with the result that he sustained very serious injuries. He testified that he did not see defendant's wires until he went up the ladder, and did not know or realize that they were charged with electricity or were dangerous; that, though he was an experienced telephone lineman, he had never done any work for an electric light company. The Postal Company, while the plaintiff was in its employ, maintained for its employees a "Pension and Benefit Plan" which contained a provision to the effect that an employee injured in the course of his work could elect whether to claim benefits under it or to sue the company for damages. An employee's election to claim benefits under the plan operated to release the Postal Company from all claims and demands in an action at law.[1] On the day after the accident the plaintiff signified his election to accept benefits under that plan by signing a paper in printed form evidencing such election, and also in consideration of $1 and receipt of the first installment of benefits, and the Postal Company's promise and agreement to pay future benefits, released that company from all suits or claims that he might have against it on account of the accident and resulting injuries. The printed form concluded with the formal expression, "in witness whereof I have hereunto set my hand and seal," but no seal or scroll appeared thereon, or accompanied or was affixed to plaintiff's signature. Under the Postal Company's plan, the plaintiff was entitled to and had received full pay for total disability during the first thirteen weeks, and thereafter half pay for total disability. Up to the date of the trial he had received $886 for 56 weeks of total disability, and his employer had paid $644 for hospital and doctors' bills. The court instructed the jury to deduct the aggregate of these amounts from any judgment they might find for the plaintiff, and presumably this was done. The court further charged the jury that if the Postal Company had no consent, express or implied, to place their wires on the O'Dwyer building where plaintiff was working, then the plaintiff would be a mere trespasser, and the defendant would not owe him any duty or care except to refrain from willfully injuring him; but that if the Postal Company's wires were placed where they were with the express or implied consent of the owners of the O'Dwyer building, the defendant would owe the plaintiff the duty to exercise that degree of care to prevent injury which an ordinarily prudent person would exercise in the same or similar circumstances; that it was the defendant's duty

---

[1] "In case of accident resulting in injury to or death of an employee, he or his dependents must elect whether to claim benefits under this Plan, or to prosecute such claim at law for damages as he or they may have against the company. If election is made to claim the benefits under this plan, such election shall be in writing and shall release the company from all claims and demands, other than under the plan which the employee or his beneficiaries may have against it on account of such accident. Should claim be made other than under this plan, nothing shall be payable hereunder."

to exercise such ordinary care to keep its instrumentalities in reasonably safe condition to avoid injury to those who might rightfully come on the premises, but that for an injury which could not reasonably have been foreseen or anticipated as a probable result of an act of negligence, there could be no recovery. The court refused to charge as requested by the defendant to return a verdict in its favor on the ground that defendant's electric wires were not shown to have been left uninsulated, and also that it was the duty of the jury to find for the defendant unless they believed that those wires were left uninsulated, and that the defendant knew or should have known that the Postal Company's employees would be called upon and would perform work in connection with the telephone wires attached to the rear of the O'Dwyer building. On the subject of contributory negligence the jury were told that it was the duty of the plaintiff to observe ordinary care for his own safety and, if he failed to do so, or if he knew or should in the exercise of ordinary care have known of the condition complained of, or of the danger incident thereto, he should be held to have assumed the risk, and could not recover. Other charges requested on negligence and contributory negligence, in so far as they contained correct statements of applicable law, were given in substance by the court in its general charge.

■ In our opinion it was not error to deny defendant's motion for the peremptory instruction. A release intended to be in full satisfaction of a claim for damages operates in favor of all parties sought to be held as joint tort-feasors, although it may be given to only one of them; but this is not so if the plaintiff's intention was to acknowledge only part satisfaction of his claim. Lovejoy v. Murray, 3 Wall. 1, 16, 18 L. Ed. 129; Robertson v. Trammell, 37 Tex. Civ. App. 53, 83 S. W. 258, affirmed on appeal by the Supreme Court of Texas in 98 Tex. 364, 83 S. W. 1098. Plaintiff's election to accept benefits under the Postal Company's plan is what discharged that company from liability in an action at law. The release was not essential, but was a mere incident and served only as convenient and conclusive proof of the election. It did not evidence plaintiff's intention to accept benefits in full satisfaction of his claim for damages against the defendant. Plaintiff, it is true, could not, after making his election to accept benefits, sue his employer, but that is because of his contract of employment which entitled him to benefits irrespective of the question of his employer's negligence. As plaintiff received no more than he was entitled to under his employment contract, no consideration was paid for the release. Ridgeway v. Sayre Electric Co., 258 Pa. 400, 102 A. 123, L. R. A. 1918A, 991, Ann. Cas. 1918D, 1. The instrument he signed apparently was not under seal, and so did not import consideration; but assuming it was under seal, in Texas where it was executed plaintiff none the less had the right to show that for such part of it as purported to be a general release he received no consideration. Wright v. Robert, etc., Motor Co., 122 Tex. 278, 58 S.W.(2d) 67.

■ Whether or not plaintiff was a trespasser was a question which was properly submitted to the jury, because of a conflict in the evidence. From the circumstance that the Postal Company's telephone wires were placed and for more than two years remained attached to the rear wall of the O'Dwyer building in plain view without objection, it was a reasonable inference that the owner of that building gave consent to what had been and was being done. The defendant was not entitled to set up a claim of trespass for the owner, but was under the duty to take reasonable care of its own wires. It is not too much to say that it ought reasonably to have anticipated that the Postal Company would send its employees from time to time to repair the telephone wires already there, or to install additional wires, or, if required by the owner of the building, to remove all telephone wires. In any of these activities the Postal Company's employees were liable to come unintentionally or inadvertently in contact with defendant's light wires. So far as appears, neither the Postal Company nor any of its employees knew that defendant's wires which were attached to the building were uninsulated or dangerous. Under these circumstances, it cannot be said as a matter of law that it was negligence not to notify the defendant whenever occasion arose to inspect or handle the telephone wires. It was for the jury to decide, and not for the court to determine upon motion for a directed verdict, whether defendant's wires were insulated when they were cut off at the building, since a phase of the evidence tended strongly to show that in the beginning the ends of the light wires were left bare by the employee who disconnected them from the building. Besides, it was for the jury to say whether in the exercise of ordinary care inspection should have been made to ascertain whether during a period of more than two years the

wires had remained insulated and in a safe condition. It is nowhere contended that the issue of contributory negligence was not one for the jury. The charges given by the court on the questions of negligence and contributory negligence were not excepted to; and, in addition to being free from any claim of error, they appear to have been full and complete.

The judgment is affirmed.

SIBLEY, Circuit Judge (dissenting).

I am not content with what has been said and done about the release. That Williams has been found too ignorant to know that light wires coming directly from the light poles are liable to have electricity in them only emphasizes that his employer ought to have warned him and to have seen that his place of work was safe. There is a plain case of concurring negligence against the telegraph company and the electric company. At some unstated time during Williams' employment by the telegraph company it set up its "pension and benefit plan." It does not appear that his wages were reduced because of it, or that he contributed in any way to it or became bound by it. So far as appears, it is merely a standing offer by the company to pay any employee who becomes totally disabled by reason of an accident in the course of employment thirteen weeks' full pay and after that half pay, together with treatment and medicine; the employee on electing to accept the offer having to give a written release of all claims against the company for damages. See footnote to majority opinion. Williams elected to accept the offer, and signed a very formal instrument so reciting, whereby in consideration of $1 and of the first installment benefit and of the company's promise to pay all the benefits under the plan he "does hereby release and forever discharge said Company * * * of and from all manner of action, cause or causes of action, suits, damages, claims and demands whatsoever" growing out of his injury. It concludes: "In witness whereof I have hereunto set my hand and seal this the 31st day of August, 1932. W. M. Williams. Signed, sealed and delivered as to employee in the presence of T. Jackson, Mrs. Bertha Sarlo, G. C. Braddy." Under it Williams at the time of the trial had received about $1,500, and will receive $660 per year for the remainder of his life.

The law of Texas controls. A statute provides that the common law of England shall be the rule of decision and shall continue in force until altered by the Legislature. Article 1, Rev. Stats. 1925. The Legislature has changed the common law as to seals by providing: "No private seal or scroll shall be required in this State on any written instrument except such as are made by corporations." Article 27. This means that a writing which at common law should have a seal is just as good without it in Texas. Wright v. Robert, 122 Tex. 278, 58 S.W.(2d) 67. The absence of a scroll or other form of seal after Williams' name is wholly unimportant. This instrument, using the technical words of release, and signed, sealed, and delivered as a deed, is the perfect equivalent of a common-law technical release under seal. The common law as to the effect of such a release of one joint tortfeasor on the liability of another has never been changed by the Texas Legislature. In Robertson v. Trammell, 98 Tex. 364, 83 S. W. 1098, the Supreme Court referred to City of Chicago v. Babcock, 143 Ill. 358, 32 N. E. 271, as a correct statement of the law, and to Abb v. Railroad Co., 28 Wash. 428, 68 P. 954, 92 Am. St. Rep. 864, 58 L. R. A. 293 and note. In the case from Illinois, which involved liabilities for concurring negligence as here, the common law is clearly stated that a full satisfaction or an accord and satisfaction for the injury from one of two tort-feasors would settle for both, that a technical release under seal of one without reserving any right against the other would also destroy the cause of action against both, but that a covenant not to sue one would not affect the other. A Texas Court of Civil Appeals in El Paso v. Darr, 93 S. W. 166, 167, held that a release of one against whom there was no real cause of action which expressly reserved rights against a third person did not release the third person; and St. Louis, I. M. & S. R. Co. v. Bass (Tex. Civ. App.) 140 S. W. 860, is to the same effect. In Ziegler v. Hunt, 280 S. W. 546, the Texas Commission of Appeals approved the opinion in (Tex. Civ. App.) 271 S. W. 936, in which the plaintiffs sued one tort-feasor for $60,000, settled and released the defendant for $11,250, and then sued the other tort-feasor for $60,000 to be credited with the $11,250, asserting that the settlement was not intended as a full satisfaction nor to release the second defendant, but the court held that could not be shown and that the entire cause of action was gone. That the release of one person liable for concurring negligence will release the other was stated to be the common law

in Chicago & Alton R. Co. v. Wagner, 239 U. S. 452, 36 S. Ct. 135, 60 L. Ed. 379, and the Illinois case of City of Chicago v. Babcock, supra, was cited. The federal case was similar to the one at bar except that the benefit fund was mostly raised from the employees, the employing company contributing only 15 per cent. It was held that a release given in order to participate in the fund did not bar the suit against the other negligent party, but only because the release was inoperative under the Federal Employers' Liability Act (45 USCA §§ 51–59). The case of Ridgeway v. Sayre Electric Co., 258 Pa. 400, 102 A. 123, L. R. A. 1918A, 991, Ann. Cas. 1918D, 1, is not in point here. There the employee's benefit involved was an insurance on his life, and is expressly so called, and it is evident that he had made contributions in the nature of premiums. The case was put under the rule that a tortfeasor has no right to profit by insurance paid for by the injured party. The court held also, a little rashly it seems to me, that the payments being wholly contractual the release given could have no reference to a tort liability. In this case Williams had no insurance and expressly released the tort for money paid and to be paid which otherwise he could not have got. The case of Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129, held that a judgment recovered against one tort-feasor with a partial collection on it was no bar to suit against the other tort-feasor. There was no release involved. As I understand the common law, a full satisfaction from one tort-feasor will satisfy as to all, but if a mere payment or settlement without a release is relied on it must have been intended as a full satisfaction. A release has no necessary relation to satisfaction. It was the common-law way of killing a cause of action without full satisfaction. If a technical release be given, it destroys the cause of action against all who are liable for the injury, because for the one injury there is but one cause of action, notwithstanding it may be asserted severally against

each. If one wishes to pay partially and be relieved, it has to be done by a covenant not to sue him. If a release is taken, it destroys the cause of action unless reformed for fraud, accident, or mistake. It has been said that a mere ignorance of its legal operation in releasing all is not ground to reform the release. Hunt v. Rhodes et al., Adm'rs of Rousmanier, 1 Pet. 1, 7 L. Ed. 27. But if the release shows on its face a reservation of the right of action against another, it is apparent that it is not really a release of it and will be given effect as a covenant not to sue. Perhaps the law ought to be that in a case of concurring negligence there are two causes of action and a release of one does not bar the other, but this court has no right thus to remake the law of Texas. If it had appeared that Williams had contributed to this benefit plan so that it could be called insurance bought by him, or if he could show that making this release was due to a mistake, entitling him to reform it, a different case might be made. As it is, we have a clear technical release of one contributor to a single injury without any reservation, and according to the common law it destroyed the whole cause of action. If it could be treated as a covenant not to sue, the other tort-feasor would still be entitled to have credited the entire consideration, and this would include not only what was collected prior to the trial, but also the present value of installments yet to come. If the payments are insurance, no credit at all is due for them. The case does not seem to me to have reached a correct conclusion.

## On Rehearing.

PER CURIAM.

As neither of the judges who concurred in the decision of the court in the above-numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.