HEARD NOVEMBER TERM, 1875.

## SMITH & MELTON vs. MOORE.

A judgment against a vendee of chattels for breach of an implied warranty of sound-
ness is not evidence of an alleged breach of a similar warranty in an action by
such vendee against his vendor—and this although the vendor had notice of the
pendency of the action against the vendee.

BEFORE CARPENTER, J., AT RICHLAND, MAY TERM, 1875.

This was an action by Smith & Melton, against Alfred Moore
to recover damages for an alleged breach of an implied warranty,
in a sale of thirty-two bales of cotton by the defendant to the
plaintiffs, that such cotton was good merchantable cotton.

The plaintiffs gave evidence tending to show that on the 15th
day of June, 1866, they purchased from the defendant, at a full
price, which they paid, thirty-four bales of cotton; that the pur-
chase was by samples furnished by the defendant, and that the
samples were of good merchantable cotton; that on the next day
they sold the cotton, by the same samples, to Robert E. and Charles
McDonald, of North Carolina; that in March, 1870, the plaintiffs
were sued by the McDonalds in the Circuit Court of the United
States for the District of South Carolina, to recover damages for
an alleged breach of an implied warranty that the said cotton,
when sold by them to the McDonalds, was good merchantable
cotton; that in February, 1871, pending said action, the plaintiffs
caused to be served upon Moore a written notice of the pendency
of said action, calling upon him to defend the same, and giving
him notice that in the event of a recovery therein they would hold
him liable for the amount of the recovery and for all costs and
expenses incurred by them; that the plaintiffs, Smith & Melton,
were entirely guided in their defense of the action by the repre-
sentations of Moore; that he furnished all the information as to
the condition of the cotton sold by him to them, and also procured
the attendance of the witnesses upon which the defense was main-
tained; and that he appeared at the trial as a witness, in obedience
to a subpœna served upon him,—the plaintiffs, Smith & Melton,
paying his expenses,—and testified in their behalf.

The action of the McDonalds against Smith & Melton was tried
at Columbia in March, 1871. The jury found for the plaintiffs
therein damages to the amount of $803. Judgment was entered
thereon and execution issued. The amount of the recovery and

all costs were paid by Smith & Melton before they commenced this action.

The plaintiffs gave in evidence the said judgment against them. It was objected to by the defendant, but the objection was overruled, and the defendant excepted.

The plaintiffs having closed, the defendant moved for a nonsuit, on the ground that there was no evidence tending to show that the cotton was not good and merchantable cotton at the time it was sold by the defendant to the plaintiffs. His Honor granted the motion, and the plaintiffs appealed.

*Hamilton*, with whom was *Brice*, for appellants, contended that the judgment in *McDonalds* vs. *Smith & Melton* was evidence to show that the cotton was not merchantable when sold to the plaintiffs by the defendant, and said:

The questions presented to this Court at the outset are:

1st. Did the notice to Moore in the suit in the Circuit Court of the United States make him a party to the record so as to bind him conclusively as a solemn admission of record?

2d. If not, was it not sufficient evidence, coupled with the other testimony, to go to the jury?

I have no doubt that at least upon this last proposition the nonsuit must be set aside, because the testimony of the plaintiffs is uncontradicted that it was the identical cotton the subject of the suit in the Circuit Court of the United States. If, as His Honor said, it was not "clearly proved that the cotton which was the subject of the suit was the same as that sold by Moore to the plaintiffs," that was a question for the jury and not for the Court. If I understand the rulings of all the Courts in this country and in this State, they will not take a case away from the jury if there is *any* evidence of the facts upon which a verdict can be founded. The proof was conclusive and uncontradicted that it was the same cotton; that Moore conducted the whole defense so far as furnishing the testimony. He testified himself in the United States Court, and surely these facts coupled with the record were evidence to justify a finding by the jury. "Although a record is not admissible as evidence against others than parties or privies, it may yet be offered against strangers to show the fact of recovery and the *quantum of damages*, but it does not conclude them as to any mat-

ters which were in issue between the parties."—*Middleton* vs. *Thompson*, 1 Speer, 70; *Allen* vs. *Roundtree*, 1 Speer, 79.

In the present case, if the jury were satisfied from the testimony that the cotton was the same, might they not properly conclude that the recovery was had for the damage which the record shows was the issue in the case, and ascertain thereby the damage which the plaintiffs were obliged to pay? Certainly the Court had no right to take it from the jury and say that it was "no evidence." Upon this branch of the case, I do not believe this Court will hesitate to set aside the nonsuit.

But it is more important for the Court, in the interest of the business community and of fair dealing, to decide that the notice to Moore made him a party to the record, and he is concluded by it as to the matters in issue and the amount of the recovery.

The doctrine of voucher was no doubt in England confined to real actions; but in this State the practice of calling in a vendor to defend his title has been by notice, and it has been applied as well to personal property as in suits upon a covenant of warranty of title to real estate.—*Davis* vs. *Wilbourne*, 1 Hill, 28; *Brown* vs. *McMullen, ibid*, 29.

But it is contended that it is confined to matters involving title.

The only case in our own books which I can find is *Legare & O'Hear* vs. *Fraser*, (3 Strob., 379,) which was an entirely similar case to this, where notice was given. The Court says: "The only question would seem to be whether the verdict against Legare & O'Hear must not be regarded as a verdict against this defendant, and conclude him from any anterior defense. I should (if it were necessary) be very much inclined to say it would." In the case of *Middleton* vs. *Thompson*, (1 Speer, page 70,) the practice in this State is clearly set forth: "By analogy to such cases, and in imitation of the voucher under the ancient warranty, the modern practice of giving notice to one who is bound in a covenant running with the land seems to have grown up and to have been gradually extended to all cases of covenants to warrant, either land or personalty, *and to all cases where recovery over will be sought by one who has been sued in the event of a recovery against him.*"

The practice has been long since established in New York. The case of *Kip* vs. *Brigham* (6 Johns. Rep., 168,) is an illustration, where a Sheriff was sued for an escape, and gave notice to the sureties of the prisoner, to whom jail liberties were granted, who, with

the Sheriff, defended the action. The Court decided that the notice made them parties to the action, and they were bound by the judgment as conclusive of the fact of the escape. This was no case of title, but it was one where a recovery over would be expected against the sureties; and the wisdom and convenience of the practice has grown up from that fact; and I know no class of cases to which this practice can be more beneficially extended than those involving fraud in the sale of cotton. Cotton in bale passes from hand to hand with every possible speed, and always sold by sample, which is a warranty by the vendor that the bulk of the article corresponds in quality with the sample. Not to have so convenient a practice fixed, and to make one trial conclusive as to the fraud in the sale of a bale of cotton and as to the amount of damages, would be to cause an infinite multiplicity of actions to try the same question. And I do not think this Court can hesitate to say that the practice is well established in this State and elsewhere, and that it is a just, wise and convenient practice, and will lay it down directly as their rule, that in cases of warranty of personal property, whether of title or of quality, where a vendor has notice to come in and defend a suit given him by his vendee, that he becomes a party to the action, and the judgment is conclusive against him as to all matters which were in issue.

The matter in issue in the case of *R. E. & Charles McDonald* vs. *Smith & Melton*, in the Circuit Court of the United States, was whether the thirty-two bales of cotton there mentioned was merchantable or not. The notice to Moore, the respondent, was full and explicit, and we say that by the judgment in that case he was concluded—

1. That the cotton there mentioned was not merchantable, but was bad and unsaleable.

2. That a recovery was had against the appellants as therein set forth.

And, coupled with the other testimony in the case, that it was the identical cotton.

The cases other than those referred to may be found as follows: *Duffield* vs. *Scott*, 3 T. R.; 374; *Clark* vs. *Carrington*, 7 Cranch, 322; *Bender* vs. *Fromberger*, 4 Dall., 436; *Leuther* vs. *Pulteney*, 4 Bin., 352; *Hamilton* vs. *Cutts*, 4 Mass., 352; *Blasdale* vs. *Babcock*, 1 John., 517; *Waldo* vs. *Long*, 7 John., 174; *Saunders* vs. *Hamilton*, 2 Hay, 226, 282.

*Brawley & Moore,* contra:

Was the record in the case of the *McDonalds* vs. *Smith & Melton* admissible as evidence to show that there had been a breach of warranty in the contract of sale to Smith & Melton by the defendant?

It was certainly not admissible, unless rendered so by the notice given to the defendant by Smith & Melton, requiring him to come in and defend them against the action of the McDonalds. Had they the right to require him to do so?

The ancient English doctrine of "voucher," as applied to real estate, has been extended in this country to *title* relating to personal property. But no precedent can be found to show that it has ever been extended so far as to embrace breaches of warranty by a previous vendor *as to quality* in cases where the vendee has been sued for a similar breach. The reason of this is obvious— title being ideal must remain the same in the vendee that it was in the vendor. But the thing sold, being generally material, is subject to incessant change, if not deterioration; so that an article of property which, to-day, may be safely warranted as sound, may, to-morrow, from accident or other cause, be affected with unsoundness. It would, therefore, be a monstrous hardship on the vendor to be compelled to defend his vendee, when sued by a third person, for any breach of warranty he might see proper to make in the resale of the article.

Another obvious reason is, that where a third person brings suit for the article sold, the immediate vendor's title necessarily comes into question and creates that sort of privity which renders it not only proper, but due to the vendor, that he should be notified, and thus afforded the opportunity of vindicating the title conferred on his vendee. And this is the foundation of the whole doctrine relating to voucher.—*Middleton* vs. *Thompson,* 2 Speer, 67.

Every sale of an article must be the result of a separate and independent contract, the terms of which may vary from those of any precedent sale of the same article. It follows, hence, that there is no privity whatever, if the title is not called into question, between the first and second vendor of the same article, and that the second vendor has no right to call upon the first to defend him against an alleged breach of his own warranty in relation to the quality of the thing sold.

The inadmissibility of this record to show that the cotton sold by Moore was not good and merchantable appears also from still another point of view.

The theory of the defense of Smith & Melton against the action of the McDonalds was plainly this: "We bought the cotton from Alfred Moore, and we will prove that the cotton which he sold to us was good and merchantable." But the plaintiffs may have replied (as was actually done): "No; you did not buy the cotton from Alfred Moore. His cotton may have been sound, but that you sold to us was not." The jury, for aught that appears from the record, may have adopted the latter view in making up their verdict. Hence the judgment concludes nothing as to the soundness of the cotton sold by Moore.

March 22, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The plaintiffs were nonsuited in the Circuit Court. The action was a breach of warranty of merchantable quality on a sale of cotton. The plaintiffs proved the sale and delivery to them by the defendant of cotton in bales sold by sample. No evidence was offered showing at the time it was sold and delivered to plaintiffs whether it was according to the samples or otherwise.

Plaintiffs rested, as to proof of a breach of the implied warranty, upon the record of a judgment recovered in the United States Circuit Court against the plaintiffs in an action brought by McDonald, a third person, to whom the plaintiffs had sold the same cotton, fer damages by reason of the cotton being unmerchantable and not fit for sale in the New York market at the time of the sale and delivery by the present plaintiffs to the plaintiff in such action. The sale to the present plaintiffs was June 15th, 1866. The sale to McDonald is fixed by plaintiff's testimony on the next day, the 16th. The day of the delivery to McDonald is not in proof, but is laid in the declaration in the action in which the judgment was recovered as the 18th of the same month.

The question presented by the judgment of nonsuit is whether the recovery against the plaintiffs is sufficient in point of law to warrant the jury in finding a verdict for the plaintiffs. It appears that defendant had notice of the pendency of the action and opportunity to assist the plaintiffs in their defense; but it does not appear that he actually defended the action.

Defendant cannot be regarded as a privy to the judgment offered in evidence, and is not barred or estopped by it, although such judgment is competent evidence to show the extent to which the plaintiffs have been damnified, provided a breach of the implied warranty is established by competent evidence.

The general rule is, that a verdict or judgment in a former action upon the same matter directly in issue is evidence, not only for or against the parties to the suit, but for or against privies in blood, privies in estate and privies in law. But, in general, notice of the suit and an opportunity to be heard appears to be indispensable to make the judgment conclusive evidence.—*Burrill* vs. *West*, 2 N. H., 190; *Phillip's Ev.*, (Cowen, Hill & Edward's Notes,) vol. 2, p. 12.

If the defendant is a privy, as it regards the operation of the judgment, it must be as "privy in estate." Are they so to be regarded? Privies in estate are where there is a "mutual or successive relationship as to rights," as in the case of joint tenants, donor and donee, lessor and lessee, and successors in office.—*Phillip's Ev.*, (C., H. & E. Notes,) *ante.*

Privity resulting from mutuality of right is not involved in the present case, for that depends upon the power of one person to represent another as to transactions in which they have a mutual interest. We are dealing with the relationships of vendor and vendee, and the privity involved in that relation depends necessarily on the idea of succession.

The direct object of the rule establishing privity for certain purposes between the different persons necessarily holding the same title to some definite subject of property is to give one and the same character to such rights, however often they may change hands. A subject of property having received in the hands of an owner a durable physical impression, all persons succeeding to its ownership are affected by the act causing such impression. The rights and obligations that constitute the idea of property stand for the material property, and the law seeks to perpetuate impressions made upon these rights and obligations into the hands of those succeeding to the parties causing such impressions. Not only the direct act and deed of a party holding property are capable of affecting the nature of his title to it, but a judgment or verdict *in personam* recorded against him works by operation of law similar changes. Inasmuch as the effect of such a judgment may be

only indirect upon such title, the direct effect being to bind the person, rather than the estate, the law causes the person who succeeds to the property to succeed also to the rights and obligations affecting it, as established by the judgment.

The naked fact that some subject of property is in the hadns of one to-day and of another to-morrow does not of itself make the rights and duties of such persons, as it regards the property, identical. It appears to be the successive possession of the title, the legal idea of property, to which the rule has relation, and the state of the title the subject of the rule. This is illustrated by the fact that recovery in an action affecting part only of the subject of property works a change upon the title by which the whole is held.—*Doty* vs. *Brown*, 4 N. Y., 71.

The direct application of the rule as to privity of estate between parties succeeding to the same property presupposes a case of the acquisition of property from one bound by a judgment affecting his title to such property, and aims to transmit that effect to such successor.

The principle of this rule has been applied to a class of cases arising between a warrantor of title, express or implied, and a vendee of such warrantor. A recovery against the vendee, under title paramount to that warranty, when the warrantor has had notice of the action and opportunity to defend, binds the warrantor as conclusive proof of the breach of the warranty.—*Middleton* vs. *Thompson*, 1 Sp., 67; *Allen* vs. *Roundtree*, 1 *idem*, 80.

This rule is applicable to personal property as well as real.— *Allen* vs. *Roundtree; Brewster* vs. *Countryman*, 12 Wen., 446.

The rule, as thus applied, derives its main force from the fact that the warranty of title to land was not merely an obligation of the covenantor to indemnify the covenantee if the title warranted failed, but to defend that title in his grantee's hands. This idea was a direct outgrowth of the feudal notion of property, and in England gave rise to the remedy by voucher in case the covenantee was sued upon a claim of title paramount. In this State the obligation to defend is still recognized, but the practice is changed by the substitution of a notice for the mere formal proceeding.— O'Neall, J., in *Middleton* vs. *Thompson*, 1 Sp., 67.

The effect of the notice would then be to place the warrantor in the same position as if he had been made a party to the action.

This principle has become still more enlarged in its application and extended from the case of a warrantor of title to land to cases of both express and implied warranty as affecting both real and personal property.

*Allen* vs. *Roundtree* (1 Sp., 80,) was an action upon a warranty on the sale of a slave, and it was held that the warrantor, after notice of the pendency of the action, was a privy to the judgment recovered.

In *Brewster* vs. *Countryman*, (12 Wen., 446,) the principle was applied where there was a parol promise to indemnify against paramount title to personalty.

In the class of cases above referred to the relation of vendor and vendee existed between the parties, and the matter of dispute was a question of title, either to real or personal property. In them, the principle of privity of estate became associated with another principle, growing originally out of the nature of a covenant to warrant and defend, viz.: That the covenantor was bound not merely to indemnify, but to defend actively, and in time extended in its application to cases of implied warranty, both of real and personal estate.

It is clear that the right claimed by the plaintiffs to bind the defendant by the judgment recovered against them, although with notice of suit brought, cannot be supported by the principles on which the cases referred to were decided; for although the relation of vendor and vendee existed between them, yet the question was not one of title.

There is another class of cases to be examined, where the binding force of a judgment has been extended to collateral warrantors and indemnitors not necessarily sustaining the relation of vendors to the party seeking to bind them by the judgment against him. Prominent among the cases of this class are covenants and promises to indemnify persons performing certain acts of authority over property, either as agents or otherwise, for the benefit of the indemnitor. The most numerous cases of this class are under bonds indemnifying officers charged with process against property, for the levy and sale of particular property, claimed adversely to such process. 'These cases, although not necessarily between privies in estate, possess substantially the same elements; for there is a conflicting claim of authority as it regards property, real and personal, involving a question of title and an obligation to indemnify in the

nature of a warrant of title and of the sufficiency of the authority which the party indemnified is called upon to exercise.

*Burrill* vs. *West*, (2 N. H., 190,) belongs to this class. Judgment was recovered against a Constable for the sale of property on execution. He then sued the defendant, who had indemnified him for selling, and offered the judgment against himself as evidence to bind his indemnitor. The action failed for want of notice to the defendant of the pendency of such suit and an opportunity to defend ; but the opinion recognizes the general doctrine, and traces the analogy between this class of cases and those that depend directly on covenants of warranty in the following language : "The amount of the defendant's undertaking was to save the plaintiff harmless from the claims of all persons having a better title to the chattel than the title of W. West, the debtor."

The cases of this class are numerous and need not be particularly referred to.

*Train* vs. *Gould* (5 Rich., 379,) was a case of this class, arising under a parol agreement to indemnify. *Lovejoy* vs. *Murrey* (3 Wall., 1,) belongs to this class, but will be noticed hereafter in connection with another branch of the general subject.

In *Castle* vs. *Noyes*, (14 N. Y., 329,) a principal claimed the benefit of a judgment recovered by his agent as a privy thereto. Castle and Noyes both claimed title to certain lumber. Castle's servant, by his direction, took a portion of this lumber out of Noyes' possession. Noyes sued the servant but was defeated. Castle assumed the defense of his servant, and the question was the title as between Castle and Noyes to the lumber. The Court held not only that the judgment was conclusive between the parties as to the particular lot of lumber immediately involved, but that it was conclusive of the title to the whole quantity of lumber held by the same title. Here this was a question of title paramount and an agreement to indemnify, implied from the relation of master and servant, and the additional fact that Castle actually defended the suit as the substantial party in interest. The last mentioned circumstance will be noticed in another connection. The Court say : "The implied obligation, growing out of the relation of master and servant, is, I conceive, the ground of estoppel of the judgment in actions of this class," and as illustrating the similarity of such an implied covenant of warranty. As it regards the duty of actively defending, the Court says that it was the master's duty to

"appear and assume his defense, grounded upon an implied obligation to save him harmless in the commission of the trespass."

In the class of cases just noticed, we find the question to be one of title, and the reason for holding third persons privies to the judgment to be the fact that such third persons were under an obligation, either express or implied, to assume the position of parties in such suits. In the one case, this obligation arises out of contracts assimilated to covenants of warranty, and in the other case out of the relation of master and servant.

Whether the master could be bound by a judgment for or against his servant, independently of the fact of his taking part in the action, and merely under the operation of notice, is left in doubt by the cases examined. Certainly if a master approves and adopts the act of his servant, and seeks to derive benefit therefor, there is reason to charge him with all the consequences of that act. But to hold that wherever the servant is sued, whether for acts rightfully or wrongfully performed, as it regards his master, the agent may by notice bind his master to the consequence, as affecting third persons, of whatever may have been done by him, would appear to be inconsistent with the right of the master to limit his liability to that which is called for by his relation to his servant.

At all events, when the master undertakes to control the suit of his servant, and thus becomes a substantial party, it may be considered that he is brought into a relation of privity with the judgment, and is both bound by it and may use it for his advantage. Under this view of the subject the identity in principle of such cases with these assimilated to a covenant of warranty is evident, for a master, upholding the action of his servant for his own benefit, stands in a relation closely similar in principle to that involved in the feudal idea of the relation of the occupant of the soil to him under whose title such occupation ought to be defended.

The present case is clearly excluded from the last mentioned class, as from others in which the principle of privity of estate and warranty of title were directly involved and applied.

The next class of cases to be noticed does not involve questions of title, but depends on the construction and force of contracts, express or implied, to indemnify against certain events. These cases must be distinguished from the class in which the recovery of judgment is in itself a breach of the condition of the contract, in which cases it appears that the indemnitor is bound by the judg-

ment without regard to notice, the recovery of the judgment being the very inquiry sustained by the covenantee that was indemnified against. These cases can hardly be said to depend at all upon privity with the judgment, for the ground on which the record is admitted is that it is primary evidence of the fact of a breach, and not a mere estoppel arising from a former recovery, while the class now under consideration depends upon the fact of privity.

In *Tyler* vs. *Ulmer*, (12 Mass., 163,) the action was against the Sheriff for the default of his deputy in executing process. It was held that the action, although in form against the Sheriff, is substantially against the deputy, who is immediately answerable to the Sheriff upon his bond, and against whom the verdict may be used as evidence to establish the claim of the Sheriff against him. The question before the Court was as to the competency, as evidence against the Sheriff, of unsworn statements made by the deputy. The competency of the evidence appears to rest on the peculiarity of the action in question. The Court says: "The form of the plea in these cases is that the deputy, not the Sheriff, is not guilty or does not owe, and the verdict pursues the plea. This case must be regarded as depending on a peculiar practice, placing the Sheriff and his deputy in unusual legal relations in reference to such action. It, in effect, holds that the deputy is, by operation of law, to be regarded as an actual party, although in name against the Sheriff. The character of both the pleadings and the evidence is conformed to that assumption."

· In *Kipp* vs. *Bingham* (6 Johns. R., 157,) a judgment recovered against the Sheriff for an escape was held to conclude the obligors on a bond to the limits. The decision was put upon the ground that the obligors had "assumed upon themselves the defense of the suit and had become essentially parties." This case supports the proposition, that where an indemnitor assumes the defense of the person indemnified, in an action against such person, he makes himself a privy to the judgment. It is not authority in itself for the proposition that in all such cases the indemnitor is held, as a privy, merely because he is under an obligation to defend, and fails to do so, after opportunity for that purpose has been afforded.

*Lovejoy* vs. *Murrey* (3 Wall., 1,) holds that an actual defense made by an indemnitor, in an action relating to the subject matter of indemnity, makes the judgment in such action conclusive against him. Independently of an actual defense, frequently adverted to in

the cases as forming ground of privity, the cases do not appear to establish, directly, the proposition that an indemnitor with notice and opportunity to defend is bound as a privy to a judgment recovered against the party indemnified in respect of the subject of indemnity, where a question of title is not involved. On the other hand, they appear, indirectly, to exclude the idea that any such unqualified rule exists. Some of these will be noticed. At the same time reference will be made to a class of cases, already referred to, arising on agreements to indemnify where the question is not one of privity, but of an inherent force in the judgment as primary evidence to establish the fact of a breach.

In *Daffield* vs. *Scott*, (3 T. R., 374,) there was an indemnity against debts, and it was held that a judgment recovered on a debt of the class indemnified was conclusive evidence of a breach. A covenant against debts, properly construed, is not merely a covenant that no such debts exist at the time, but a covenant to repay any amount that the party may be compelled to pay under legal proceedings to enforce such debts. So the judgment did not merely measure the amount of damage, but occasioned the damage against which the party has been indemnified. Hence the judgment would be primary evidence of a breach of the contract to indemnify.

*Wild* vs. *Nichols*, (17 Pick., 538,) is similar in principle to the last. In *Waldo* vs. *Levy*, (7 Johns. R., 173,) the action was on a covenant against encumbrances. A mortgage was proved to be outstanding at the time this covenant was made. To prove an eviction under the mortgage, it was held competent to show a judgment in ejectment recovered upon the mortgage. This was not a case of privity, for the judgment was in itself evidence of the eviction and the best evidence. No attempt was made to bind the covenantor to the judgment as a privy by any proof of notice.

*Henderson* vs. *Levey*, (2 Greenl., 139,) arose out of the relations of principal and agent. Defendant shipped for plaintiff, a shipmaster, lime. Plaintiff sold the lime as defendant's agent. It proved worthless. The purchaser from plaintiff sued him and recovered judgment. Plaintiff proved that defendant had notice of that suit and an opportunity to defend, and offered the record of recovery against him in evidence. The Court held that "it was only admissible proof to show that a judgment had been obtained against the plaintiff by Conner on the facts appearing in that record and the amount which had been recovered." As the plaintiff

had only offered the record for this limited purpose, proving by other means the bad quality of the lime, this case ought not to be considered as fully deciding the question of conclusiveness as it regards the character of the lime shipped, but it discloses the mind of the Court as averse to allowing such effect to the judgment.

*Lee* vs. *Clark* (1 Hill, N. Y., 56,) was a covenant to indemnify against claims. It was held that a judgment recovered upon such a claim was competent without proof of notice, showing that the case turned upon the construction of the contract, making the judgment in itself a breach of the covenant, and not upon the idea of privity with it.

It remains to consider the case of *Robbins* vs. *Chicago,* reported on its first hearing in 2 Black, 418, and on its second hearing in 4 Wall., 657. The report of the case in 2 Black shows distinctly the nature of the question before the Court. The city of Chicago licensed Robbins, an owner of a house and lot fronting on a public street, to make an area in the street in front of his house. In consequence of negligence in covering this area while under construction, Woodbury received injury, for which he recovered judgment against the city. The city sued Robbins as ultimately liable for the damage. The fact of negligence of Robbins was established by proof, and independent of the record of recovery against the city, and, after proving notice to Robbins of the pendency of such suit, and that he had an opportunity to defend it, it was offered solely for the purpose of showing the amount of damage, it was held that it was conclusive proof of that fact. On the hearing reported in 4 Wall., the same facts and question appeared, and no greater weight was demanded by the plaintiff for the record than that just stated. The Court say, in the report in 2 Black: "If it was through the fault of Robbins that Woodbury was injured, he is concluded by the judgment recovered if he knew that the suit was pending and he could have defended it." This implies that proof of Robbins's fault must be made independently of the judgment. Justice Clifford says, in 4 Wall., in reference to the rule as to who are to be considered parties and who are not: "Parties in that connection include all who are directly interested in the same subject matter and who had a right to make a defense, control the proceedings and examine and cross-examine witnesses and appeal from the judgment. Persons not having these rights substantially are regarded as strangers to the cause, but all who are directly interested

in the suit and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of these rights, are equally concluded by the proceedings."

This certainly was not intended as laying down the rule that whenever a party is sued, and he may have recourse to a third person, in case of recovery against him, he may, by notice of such person, bind him to the record as a substantial party. The case called for no such general statement, nor could Greenleaf on Ev., (12 ed., 1, 559,) cited as authority, sustain it.

The proper understanding of the view of the Court is, in the first place, to confine that remark to that class of cases in which it is competent for a party to bind another to the record, by affording notice and an opportunity to defend; and, in the second place, to regard it as a limitation of the right to call in such persons in cases in which it is competent so to call them in. Before passing from the consideration of the class of cases in which the judgment is primary evidence of the breach of an agreement, it is proper to notice the bearing of this subject in cases arising on lands indemnifying against the consequences of some act to be performed or omitted, either on the part of the indemnitor, the indemnified, or a third party, where a question of title is involved. It would seem that to indemnify against the consequences of an act would be to indemnify against a judgment recovered in consequence of such act. In all these cases, whether the security is taken to prevent wrongful acts, as in case of official bonds, or to secure the performance of voluntary acts, claimed as beneficial to the indemnitor or a third person, it would seem that the force of the judgment ought not to be considered as depending on the idea of privity, but as having such force, greater or less, absolute or conditional, depending on the true construction of the contract of the party. This would cover a numerous class of cases between the Sheriff and his deputies and indemnitors, and refer the question of the force of the judgment in such cases to the contract of the parties, giving it force as primary evidence.

It is evident from a review of the cases that the rule in question has not been extended so far as to make a judgment recovered by a vendee against his vendor for a defect in the quality of goods sold evidence of the want of the required qualities in an action brought by the latter against his vendor. Such a rule would be of doubtful convenience, if established, for the condition of the goods

at the time of delivery being the test of liability, to make a record of the condition of the goods on one day conclusive or even *prima facie* proof of what that condition was on some previous day would lead to greater inconvenience than to refuse the application of the rule altogether.

Suppose in the present case that the cotton had been rendered unmerchantable by something that had occurred intervening the day of the first delivery and before the last delivery, that fact could not have been given as evidence, properly, in the issue against the present plaintiffs by the present defendant, for it united to establish the liability of the present plaintiffs in that case, and yet ought to appear to discharge the present defendant from liability. In a word, the interests of the plaintiffs and defendant were not the same as to the issue tried in that suit, and each ought to be permitted to make his own defense, in accordance with his own interest.

The motion must be denied.

*Moses*, C. J., and *Wright*, A. J., concurred.