## BARNES *v.* VIALL.

## SAME *v.* STEERE.

## SAME *v.* POTTER.

*(Circuit Court, D. Rhode Island. ———, 1881.)*

1. FALSE IMPRISONMENT—TRESPASS.

A judgment debtor, who has been discharged from imprisonment, either under chapter 216, Gen. St. R. I., for the neglect of the plaintiff to pay his board, or under section 5, *c.* 213, because not taken in execution within 30 days after final judgment against him, cannot be lawfully arrested again upon an *alias* execution, or upon *mesne process*, in an action upon the same judgment.

2. SAME—WHO LIABLE IN TRESPASS.

If, after such discharge, the defendant be again imprisoned on an *alias* execution, the plaintiff and his attorney are liable in trespass, but not the clerk, when there is nothing on the record to instruct him that the defendant had been imprisoned for more than 30 days, nor the jailer, who is protected by the precept.

3. SAME—DAMAGES.

That the defendant was illegally arrested and detained through a mistake of law, or miscalculation of time, which was shared by all the parties, is a fact which goes far in reduction of damages.

4. SAME.

Chapter 216 and section 5, *c.* 213, General Statutes of Rhode Island, construed.

*Chas. A. Wilson,* for plaintiff.

*Ervin T. Case,* for defendant Viall.

*Dexter B. Potter,* for self and defendant Steere.

LOWELL, C. J. These three actions of trespass and false imprisonment were submitted to the court without a jury. In July, 1876, the defendant Steere brought an action of trover against the plaintiff Barnes in the supreme court of Rhode Island, and caused him to be arrested on *mesne process.* The plaintiff gave bail. After several trials a verdict was rendered for Steere for a large amount, and judgment was entered for him, upon which execution was issued and returned *non est.* On the third of December, 1878, Barnes was surrendered by his bail to the defendant Viall, the jailor of the Providence county jail, and two days afterwards Barnes caused a tort citation to be issued to Steere, under chapter 216 of the General Statutes of Rhode Island, requiring him to pay the board of Barnes within ten days, which he did.* On the second of January, 1879, Barnes not having been committed on execution in pursuance of section 5, c. 213, of said statutes, required the defendant Viall to discharge him, but agreed to stay until the next morning. Viall, in the meantime, consulted counsel, and saw the clerk of the court. On the morning of January 3d the prisoner was discharged by an entry on the jail-book, giving the cause, and thereupon left the office; but was presently after arrested by a deputy sher-

---

*GENERAL STATUTES OF RHODE ISLAND, c. 216.

Section 1. Any person who shall be imprisoned upon original writ, mesne process, execution, or surrender or commitment by bail in any action on penal statutes, or in any action of trover, detinue, trespass, trespass and ejectment, or trespass *quare clausum fregit,* in which the title to the close was not in dispute between the parties, or in any action of the case for words spoken, and who shall complain, on oath, to the keeper of the jail in which he is imprisoned, that he has no estate, real or personal, wherewith to support himself in jail or pay jail charges, shall be entitled to a citation as hereinafter provided.

Sec. 2. If such keeper shall believe such complaint to be true, he shall forthwith issue a citation, under his hand and seal, to the plaintiff at whose suit the complainant is imprisoned, if the plaintiff resides in this state; or, if he does not reside within this state, then to his agent or attorney of record; or, if he has no agent or attorney of record, then to the person who indorsed the plaintiff's writ as surety.

Sec. 3. Such citation shall set forth that such prisoner has made complaint as aforesaid, and that such prisoner will be discharged unless the sum of three dollars per week be, within 10 days from the time of the service of such citation, paid to the said keeper, in advance, for the

iff upon an *alias* execution procured on the same day by the defendant Potter, as attorney for Steere, and was recommitted to the custody of the jailor; and on the fifth of January Barnes caused another tort citation to be issued to Steere, in accordance with which the board was again paid; but in consequence, probably, of the form of citation, requiring payment in ten days, there was a lapse or hiatus of a week during which the board was not prepaid. After some weeks the plaintiff petitioned the supreme court for a writ of *habeas corpus,* but did not prosecute his petition, and filed a second petition March 24th, and on the twenty-seventh of March he was discharged by the court. The reason given in his petition for demanding a discharge was that his board had not been duly paid; but at the hearing the question was raised as to the legality of the arrest. The court gave no written opinion, but are understood to have said that he was certainly entitled to be released for the cause first assigned, and that, therefore, it was not necessary to pronounce upon the other. After his discharge he brought these three actions against the creditor, the attorney, and the jailor.

Several questions have been ably presented in the briefs of counsel: Whether the arrest and detention were illegal?

board of such prisoner, reckoning such board from the expiration of said 10 days after such service, which payments in advance shall continue to be made by such creditor during the time such prisoner shall be detained at his suit.

Sec. 4. Such keeper, upon issuing the citation, shall, at the expense of the state, cause service thereof to be made by the sheriff, his deputy, or any town sergeant or constable, on the person to whom such citation shall be directed as aforesaid, by reading the same to him in his presence, or by leaving a true and attested copy thereof at his last and usual place of abode.

Sec. 5. In case of default made in payment of such prisoner's board, as required in the third section of this chapter, the keeper shall discharge such prisoner from jail, stating, in his formal discharge on the jail-book, the reason therefor.

Sec. 6. The amount thus paid by the creditor for the board of the prisoner, so imprisoned at his suit, shall be added to and form a part of the costs of commitment and detention, and as such costs shall be paid by the prisoner in the then existing or any future proceedings which may be lawfully instituted against him for the recovery of the debt and costs of such suit.

whether trespass lies? whether the execution will protect all the defendants until it has been set aside by the court from which it issued? whether it will protect the jailor? whether the plaintiff has waived the irregularity by requiring the defendant Steere to support him in jail? The decisions in actions for false imprisonment, and the kindred but distinct action for malicious prosecution, are very numerous, and we have examined many of them.

The distinctions taken are very nice, and call for a careful examination. By the statute of Rhode Island, if a principal defendant shall be committed to jail by his bail after final judgment, he shall there remain for the space of 30 days; and if not taken in execution within that time, he shall be discharged from jail on payment of the prison fees. Gen. St. c. 213, §§ 4, 5.*

A law or practice requiring a defendant to be charged in execution within a limited time after judgment, if he has been imprisoned on *mesne process*, or after he is surrendered by his bail upon the judgment, is common to our jurisprudence and that of England. In England it depends upon rules of court, but in most of the United States upon a statute. When the judgment debtor has been thus discharged for this cause, it is held in England that the debt is not released; but the plaintiff cannot lawfully arrest the debtor again upon an execution issued upon the same judgment, nor can he evade that consequence by arresting him upon *mesne process* in an action on the judgment; but he may again imprison his debtor upon a second judgment. *Pullen* v. *White*, 3 Burr. 1448; *Russell* v. *Stewart*, 3 Burr. 1787; *Blandford* v. *Foote*, Cowp. 72; *Smyth* v. *Jefferys*, 6 T. R. 777; *Masters* v. *Edwards*, 1 Caines, (T. R.) 515.

*GENERAL STATUTES OF RHODE ISLAND, c. 213, § 5.

If the principal be not taken in execution within 30 days after final judgment against him when committed for want of bail, or when committed by his bail, or by the court to which his bail shall have surrendered him before such final judgment, or within 30 days after he shall have been committed by his bail, or by the court to which his bail shall have surrendered him, pending *scire facias* against his bail, such principal shall be discharged from jail upon payment of prison fees.

It was hardly denied in argument that the statute of Rhode Island requiring the discharge of the plaintiff was intended to operate at least to prevent another arrest upon the same judgment. It may be that it discharged the plaintiff's body in respect to that debt for all future time. See *Hidden* v. *Saunders*, 2 R. I. 391.

The statute does not provide any machinery for the discharge. It simply requires that the principal debtor shall be discharged. If the law were that the court should or might supersede the execution, then it might follow that the court could impose terms, such as that an action should not be brought, as is the law in England and New York; and that until the writ is superseded it is not too late to charge the debtor in execution, as was held in New York and South Carolina. *Brantingham's Case*, cited in *Reynolds* v. *Corp*, 3 Caines, 267; *Robertson* v. *Shannon*, 2 Strobh. 419. In the second of these cases is a very learned and interesting history and description of the English practice. From the language of the statute, "such principal shall be discharged from jail," and from the action of the jailor, which probably followed the usual practice, it would seem that the discharge is peremptory and purely ministerial, and we so consider it.

We are of opinion, therefore, that the plaintiff was duly discharged from jail, and was not liable to imprisonment again upon a fresh execution.

Does trespass lie for the new taking and detention—*First*, against the creditor and the attorney; *second*, against the jailor? As a mere question upon the form of action, our statute would require this point to be taken by demurrer. Rev. St. § 954. But behind the form lies the substantial question, whether it is necessary to prove malice, which is the gist of the action upon the case. The distinction is that for force directly applied the person using or commanding it is liable in trespass if the act was unjustifiable; but one who is only remotely instrumental in causing the injury is to be sued in case. If a warrant, writ, or order is procured from a judge or judicial officer having jurisdiction of the subject-matter and the parties, upon a true and fair statement of the

facts, then, if the writ or order is erroneous, it is the mistake of the court; and, since it is highly inexpedient that a judge should act at the peril of damages, there is no redress. This is so in some cases, even where the judge has not jurisdiction, if he decides that he has it. If, however, the facts are falsely and maliciously stated to the judge, the person guilty of the malice is liable in an action on the case. But if the act is throughout the act of the party, and there is no actual judicial finding, trespass will lie for the injury whether it was committed with or without malice. The only difference is in the damages. In this country, and especially in New England, the writ of execution is not granted by a judge, but issues as matter of course from the clerk's office; and there are many decisions that a justice or clerk who issues such a writ does it ministerially, and not judicially, and therefore is responsible in damages if one is issued contrary to law upon the facts within his knowledge. See *Briggs* v. *Wardwell*, 10 Mass. 356; *Fisher* v. *Deans*, 107 Mass. 118; *Andrews* v. *Marris*, 1 Q. B. 3; *Carratt* v. *Morley*, Id. 18; *Lewis* v. *Palmer*, 6 Wend. 367.

In this case there was nothing upon the records of the supreme court to instruct the clerk that the plaintiff had been imprisoned for more than thirty days, and therefore he was not wrong in issuing the execution in the form usual in such cases. The authorities are likewise many which hold that when a plaintiff, through his attorney, procures an execution or other writ which issues as of course, and which he has no right to have, both the plaintiff and the attorney are liable in trespass: the plaintiff, because the attorney acts for him in the due course of his employment; and the attorney, because in *tort* the command of a superior is no defence. *Deyo* v. *Van Valkenburg*, 5 Hill, 242; *Kerr* v. *Mount*, 28 N. Y. 659; *Bates* v. *Pilling*, 6 B. & C. 38; *Codrington* v. *Lloyd*, 8 A. & E. 449; *Green* v. *Elgie*, 5 Q. B. 114.

The leading case upon this subject is *Barker* v. *Braham*, 3 Wils. 368. There the attorney of a creditor caused execution to be issued against the person of an administratrix, when it should have been only against the goods of the intestate in her hands. Trespass was sustained against the attorney and

the client. The only difference which has been pointed out between that case and this is that the writ had been set aside before the action was brought. But here the plaintiff was discharged on *habeas corpus,* and though that was, probably, for a different cause, yet after he was set at liberty he had no occasion to apply for a modification of an execution which had become inoperative as to his person. Besides, this was not a case demanding action by the court. The reason for the rule that an order of court must be vacated before an action will lie, is that the judgment of a court cannot be collaterally impeached; but when a certain sort of writ has come to be issued as a matter of course, ministerially, the reason for the rule ceases. It was often said, formerly, that a writ or order after it had been set aside was a nullity from the beginning, and the party could not justify under it, because, when he appealed to the record, there was no such record remaining. But this notion is entirely exploded. The court will inquire why the writ or order was set aside, and if for error of the judge no action lies. *Williams* v. *Smith,* 14 C. B. (N. S.) 596; *Smith* v. *Sydney,* L. R. 5 Q. B. 203.

So, in the converse case, if the error was not that of the judge or court, but a mistake of the party, then an action lies immediately. This is a question of fact; and it was the fact in this case that the writ issued as of course. The point is a vital one, undoubtedly; and it may be that the plaintiff, having been driven to his petition for *habeas corpus,* might have been required by the supreme court to stipulate not to bring an action. We doubt whether the court has a discretion to that extent, but do not decide the point. If they could have made such an order they did not.

A single execution in Rhode Island contains all three of the old writs, just as in Massachusetts, 70 years since, *Parsons,* C. J., said: "By our statute we have but one form of execution, which includes a *capias ad satisfaciendum,* a *levari facias* as to the money of the debtor, and an *extendi facias* as to his lands." The statute requires that when the body is exempt the *capias* shall be struck out. Gen. St. *c.* 211, §§ 13, 15, 18. It was the duty of the attorney to see that

this was done.   If the execution had been issued a few hours earlier, it would have been regular, and then the *arrest* after 30 days would have been bad; and we do not wish to be understood that the responsibility of the attorney and client would have been at all different in this state of facts.

The following cases will be found applicable to some or all of the points heretofore discussed.   In many of them the writ was not set aside; in others it was; but, for reasons already given, this was unnecessary in the present case.   Where a justice of the peace, having jurisdiction, had rendered a valid judgment, but had issued execution within 24 hours thereafter, his second act was ministerial and void, and he was liable in trespass.   *Briggs* v. *Wardwell*, 10 Mass. 356.   Execution similarly issued from a court of record is void, and a levy under it conveys no title.   *Penniman* v. *Cole*, 8 Met. 496. Where judgment creditors had, through their attorney, taken out execution when an appeal was pending to the court from the clerk's taxation of costs, they were liable in trespass. *Winslow* v. *Hathaway*, 1 Pick. 211.   Where an execution, afterwards set aside for irregularity, was levied on the plaintiff's goods, it was held that the cause of action arose at the time of the levy.   *Read* v. *Markle*, 3 John. 523.   Where a debtor was in prison on execution, an *extendi facias* taken out by the creditor was merely void, and might be collaterally impeached.   *Kennedy* v. *Duncklee*, 1 Gray, 65.   So where the debtor had been discharged from imprisonment with the creditor's consent.   *King* v. *Goodwin*, 16 Mass. 63.   Where a statute prohibited arrests before execution for a debt of £20 or less, but gave the judge power to authorize it under certain circumstances, trespass was maintained without setting aside the *capias*.   *Brooks* v. *Hodgkinson*, 4 H. & N. 712.

It is commonly said that such writs are void, and, if the case turned upon that, we might probably hold that the execution, in as far as it was a *capias*, was void.   But that expression is not a very happy one, because it was not void upon its face, and would undoubtedly protect the sheriff who acted under it.   It is void, upon the weight of authority, as a defence to the party who wrongly procured it.

It will be proper to notice one or two classes of cases, somewhat analogous to this, in which trespass did not lie. A person may have a privilege from arrest for debt, and, if he is arrested, his only action will be case for a wanton or malicious arrest. The reason for this appears to be that a great variety of persons have this privilege under various circumstances. A writ which requires the arrest of such a person is valid, because neither the plaintiff nor the officer is bound to know the facts upon which the privilege depends; as, for instance, whether a trial is going on to which the defendant has been regularly summoned. In the leading case of *Cameron* v. *Lightfoot*, 2 W. Bl. 1190, the privilege of a witness is explained to be that of the court rather than his own, and that the court has a discretion to require him to give bail, notwithstanding the privilege. The precedent of that case has been followed in all those in which a privilege has been violated. In the present case the plaintiff had not a mere personal privilege. The creditor, having detained him as long as the statute permitted, had exhausted his right of imprisonment; he was, therefore, not disregarding a personal privilege, so much as assuming to himself a right which he did not possess. When the person of a defendant has been discharged, through the regular operation of an insolvent law, the courts of New York hold that the plaintiff who causes him to be arrested is liable in trespass.

In England this form of remedy was refused in a similar case,—in *Ewart* v. *Jones*, 14 M. & W. 774,—partly because the statute had given a remedy by summary application to the court, and partly because of the hardship of holding a creditor in trespass—that is, without proof of malice,—for an act which might be entirely innocent, as he might not have had notice of the proceedings in insolvency. Neither of these considerations applies to this case. In the ordinary case of one who has been discharged under a bankrupt law an additional reason may be given: that, until some recent statutes, the discharge itself might be collaterally impeached, and therefore a creditor wishing to contest the discharge had his

full right of action preserved to him, subject only to the usual penalty of costs if he failed to make his objection good.

The question whether the defendant Viall, the jailer, is liable to this action is the most difficult of all. An officer is protected by his precept. We consider the only exceptions to be when he himself had done some act under his warrant which renders the future arrest illegal, and when he knows with certainty that certain facts, though not done by him, have occurred since the warrant was issued which will have a like effect. Nothing which goes to prove that the writ ought not to have been issued shall affect him. In this case the jailer knew that the plaintiff was entitled to be discharged, and he discharged him accordingly; but in our opinion he was not bound to know that the *alias* execution was issued wrongly and improvidently. We can inquire, but he could not, whether the writ was taken out ministerially, as usual, or whether it was granted upon some special finding by the court; for it might happen that an execution should be so issued, though it is not usual. We hold, therefore, that the jailer was not bound to inquire into the mode in which a writ, regular upon its face, was obtained, and is justified in obeying it, although, as the facts now appear, he would also have been justified in disregarding it.

As to the damages. Here, again, the case much resembles *Barker* v. *Braham*, 3 Wils. 368, where the chief justice told the jury that there was no evidence of any conspiracy to oppress, but a mere mistake of the attorney, and that it was in some measure the plaintiff's own fault that she was detained in prison for eight months, for she might have obtained her release by application to the court or to a judge in chambers within a day or two after she was arrested. This case, also, is very much more favorable to the defendants, because the plaintiff here was liable to be arrested, and the only slip was in not obtaining the writ a few hours sooner; and he not only remained in prison, but he required the defendant Steere to support him there. This act of his is relied upon as a waiver of the illegality; but it is plain that all parties were acting

under a common mistake, and therefore, while a knowledge of law is imputed to every one, an act done in ignorance of the law should not have consequences which the actor could not in fact have intended. In this respect it differs from the act of causing the plaintiff's arrest, because that inflicted a positive injury which has no legal excuse. Requiring support in prison was not more a waiver, under the circumstances, than staying there was a waiver. It is a fact which goes very far in reduction of damages, but not to the whole action. There is no evidence that the defendant suffered more or otherwise, in any respect, than he would have done if the attorney had been a little more prompt. He has given us no evidence of any losses or expenses, or of any special damage. He was illegally arrested and detained through a mistake of law or miscalculation of time, which was shared by all the parties.

The plaintiff has brought these actions, as he had a right to do, and we hold that two of them are sustained by the facts. The injury was single, but the defendants Steere and Potter are jointly and severally liable, and the plaintiff can obtain from one or both of them a single satisfaction. *Murray* v. *Lovejoy*, 2 Cliff. 191; S. C. 3 Wall. 1; *Stone* v. *Dickinson*, 5 Allen, 29; S. C. 7 Allen, 26; *Gregory* v. *Cotterell*, 1 E. & B. 360; *Elliott* v. *Hayden*, 104 Mass. 180; *Savage* v. *Stevens*, 128 Mass. 254.

If the action or actions had been brought in the supreme court of Rhode Island, there might have been a set-off of judgments between the plaintiff and Steere. Whether this remedy is open here, we do not decide.

We assess damages against the defendants Steere and Potter severally at $500, with costs.

We give judgment for the defendant Viall for his costs.

KNOWLES, D. J., concurred.