# THE DISTRICT OF COLUMBIA

*v.*

## BOLLING.

PLEADING AND PRACTICE; JOINT TORT FEASORS; CONTRIBUTORY
NEGLIGENCE; CONSTRUCTIVE NOTICE.

1. Where in an action by husband and wife against three corpora
tions for injuries to the wife caused by her being thrown from a
buggy drawn by a horse which was frightened by the falling
of a telegraph pole which had rotted at the base, the first
count of the declaration charges the defendants with being
co-owners of the telegraph pole, and the second count charges
one with being the owner and the others with using and main-
taining it, the effect of the two counts is to charge the defend-
ants as joint tort feasors, with a joint and several libaility to
the plaintiff; and a verdict can properly be found against any
or all of the defendants.
2. In such a case, the fact that the wife knew that her husband, who
was driving, was "slightly paralyzed" so as "to affect to some
extent his left hand and arm, but not so that he could not use
them," does not imply contributory negligence on her part,
where the horse was an ordinary gentle one and the husband
accustomed to his use.
3. The refusal of the trial court in such a case to grant an instruc-
tion on behalf of one of the defendants that the plaintiff is not
entitled to recover unless the jury shall believe that such de-
fendant had notice of the decayed condition of the telegraph
pole, is not erroneous, as it precludes the idea of the existence
of constructive notice.

No. 322. Submitted October 8, 1894. Decided November 6, 1894.

HEARING on a bill of exceptions by one of three defend-
ants in an action of damages by husband and wife for per-
sonal injuries to the wife. *Affirmed.*

The COURT in its opinion stated the case as follows:

The plaintiffs, George W. Bolling and Caroline H. Bolling,
his wife, sued the District of Columbia, the United States

Electric Co. and the Western Union Telegraph Co. to recover damages for injuries received by the wife. On October 14, 1891, plaintiffs were riding south on the west side of Fourteenth street in the city of Washington, in a buggy drawn by a single horse which the husband drove. As they approached Thomas Circle, a "telegraph pole" which stood in the adjacent sidewalk suddenly fell into the street, bringing down a number of wires attached thereto and to a pole on the south side of the circle. There were at least six wires attached to the pole which belonged to the District of Columbia, and were in use for fire alarm and police services. The wires falling through the limbs of the trees made a loud and unusual noise, which frightened the horse. He reared and turned suddenly to the left, or east, overturning the buggy and throwing plaintiffs upon the street. Mrs. Bolling was caught under the overturned buggy and dragged some little distance, sustaining severe injuries, from which she suffered much pain, and so forth. The horse was a very gentle and safe animal, which plaintiffs had hired for the trip from their home in Fairfax County, Virginia, to Washington and back. They had frequently hired the same horse for driving into the city and had found him safe. He was used to the scenes and sounds of the streets, including "cable" and steam cars. Bolling was "slightly paralyzed" in the left side, and this "affected to some extent his left hand and arm, but not so that he could not use them." His right hand and arm were sound and strong. He had driven the horse frequently for two years before the accident, and his wife often rode with him.

The plaintiffs, being uncertain as to the ownership and uses of the pole and wires, framed the declaration in three counts. The first charges that all the defendants are "the owners and proprietors" of the line of poles on Fourteenth street, including the one which fell, and it was the duty of each and all to keep and care for them, and so forth. The second count alleges that the electric company was the owner,

and that the District of Columbia and the telegraph company were using and maintaining them for the support of their respective lines of wires, and it was the duty of each and all to maintain them properly. The third count cut no figure in the trial, and need not be mentioned further.

It was proved that the poles were erected by the telegraph company in 1872 for use in its business. In 1875 the telegraph company consented to the use of the poles by the Commissioners of the District, who strung certain wires thereon and used them. In 1888 the telegraph company abandoned the use of the poles and sold them to the electric company, which used them for its wires for street lighting, at the same time acquiescing in the use of them by the District officers. The electric company laid a conduit in the street, and in May or June, 1890, had all its wires laid therein. It then informed the Commissioners that it had no use for the poles, which were then, or would become dangerous, and asked permission to unearth and remove them. The Commissioners declined to let the poles be removed, because necessary to their fire alarm and police services, whereupon the electric company informed the Commissioners that they might have the poles. Thanks were given for this gift, because the Commissioners said they had no money with which to pay for them. They continued to use the poles to the time of the accident, and have done so since. Two days after the accident the electric company wrote to the Commissioners referring to its abandonment of the poles in 1890, the use of them by the Commissioners, and their refusal to permit their removal. It called attention to the accident, and asked leave to remove the poles. The Commissioners at once passed a formal order reciting their use of the poles since 1876, the necessity for their continued use, and relieving the electric company from all responsibility for the poles. The Commissioners repaired the line at once. It was proved that the pole which fell was completely rotten. Some witnesses said there was "not a

sound fibre of wood " in the pole, at the point where the break occurred, near the surface of the sidewalk.    There was some testimony to show that while thoroughly rotten within, there was a thin rim of apparently sound wood on the outside of the pole.    There was no storm or severe wind, and nothing to warn plaintiffs of danger.    There was no evidence that Bolling was driving carelessly or that he negligently drove into danger.    There was no substantial conflict in the evidence upon any point.

There being no evidence whatever to inculpate the Western Union Telegraph Co., a verdict was directed to be returned for it.    The charge made plaintiffs' right to recover against the electric company turn upon the truth of its claim that, long prior to the accident, it had given the poles to the District of Columbia, and had ceased to use them for any purpose.    The general charge covered fairly the issues in the cause, and the exceptions taken by defendant relate exclusively to the refusal of certain special prayers for instructions offered on its behalf.    The jury found for the electric company and against the District of Columbia, assessing plaintiffs' damages in the sum of $2,000.

*Mr. S. T. Thomas*, Attorney for the District of Columbia, and *Mr. Andrew B. Duvall*, Assistant, for the plaintiff in error, cited:

*Marion* v. *Skillman*, 127 Ind. 130; *Neff* v. *Wellesley*, 148 Mass. 487; *Smith* v. *Wildes*, 143 Mass. 556; *Harris* v. *Uebelhoer*, 75 N. Y. 169; *Winn* v. *Lowell*, 83 Mass. 177; *Davenport* v. *Ruckman*, 37 N. Y. 568; *Gray* v. *District*, 2 App. D. C. 500.

*Mr. Henry Wise Garnett* and *Mr. D. S. Mackall*, for the defendant in error, cited:

2 Add. on Torts, 1131; *Sessions* v. *Johnson*, 95 U. S. 347; Thomp. on Neg. 1148, Sec. 3; Beach on Contr. Neg. 19;

*Railroad Co.* v. *Thomas*, 79 Ky. 160; *Washington* v. *Railroad*, 17 W. Va. 190; *Railroad* v. *Patton*, 31 Miss. 156; *Railroad* v. *Karns*, 13 Ind. 87, 89; *Tuff* v. *Wannan*, 2 C. B. N. S. 740; Pollock on Torts, 375, 376, 377; *Railroad* v. *Kean*, 28 A. & E. RR. Cas. 580, 584; *Farlow* v. *Kelly*, 108 U. S. 288.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first error complained of is based on the alleged failure of plaintiffs' proofs to conform to their pleading. It is contended that the court erred in refusing defendant's request for an instruction to the jury to return a verdict in its favor, because, under the allegations of joint ownership and use by all three of the defendants, the jury could not find against this defendant alone. And it is urged " that the verdict against the District alone *ex necessitate* negatives the ownership and use as alleged." The plaintiffs, having apparently no certain knowledge as to the ownership and uses of the poles as between the several defendants, joined all of them as defendants.

We think the effect of the first and second counts of the declaration is to make them all tort feasors or wrongdoers with a joint and several liability to the plaintiffs for the injury inflicted. It was clearly within the power of the jury to find a different verdict in the case of each defendant. *Lovejoy* v. *Murray*, 3 Wall. 11; *Pirie* v. *Tvedt*, 115 U. S. 41.

2. The subject of the second assignment of error is the refusal of the court to submit to the jury, as an issue in the case, the contributory negligence of Mrs. Bolling. Several prayers on this point were offered and refused. Taken together, they contained this proposition, substantially: That if the husband had but imperfect use of his left arm and hand, that this was known to the wife, and that but for this disability he might have controlled the horse and prevented the accident, the wife was guilty of contributory negligence and not entitled to a verdict.

4 Ct. App.—26

Instructions are not to be given to a jury simply because they may embody a sound proposition of law in general. They must have a direct application to the case as made out by the evidence. Negligence is one thing, and casual connection thereof with the injury received is distinctly another thing. Contributory negligence, or that which deprives a complaining party of his right to recover for injuries received through the negligence of another, must in some degree have contributed thereto. Pre-existing negligence which amounts to a mere condition, and, though immediate in point of time, is nevertheless remote in the sense of causation, is not sufficient. We have heretofore said in another case : " It is not true that every fault or want of care on his own part, preceding the receipt of an injury, will deprive the injured party of the right to recover therefor from the party inflicting it." *B. & P. RR. Co.* v. *Carrington*, 3 App. D. C. 101.

It cannot be imputed to plaintiffs as negligence that they did not anticipate culpable negligence on the part of the defendant. They had the right to presume that the streets were clear and safe for ordinary travel. *Wash. Gas L. Co.* v. *Poore*, 3 App. D. C. 127.

It is difficult to conceive how, under ordinary conditions, to ride behind a gentle horse driven by one accustomed to his use, even though the driver might be " slightly paralyzed," so as to " affect to some extent his left hand and arm, but not so that he could not use them," could be considered negligence, in a legal sense. Let it be granted, however, that under peculiar circumstances or under certain conditions the existence of which was known or could reasonably have been inferred, such an act might constitute contributory negligence, still there was no possible foundation for such a conclusion in this case, and the court did not err in refusing to submit the issue to the jury.

3. The third and last error assigned is the refusal of the court to give to the jury the following special instruction :

"The plaintiff is not entitled to recover against the District of Columbia unless the jury believe from the evidence that said defendant had notice that the telegraph pole which fell was in such a decayed and dangerous condition that by reason thereof it was liable to fall."

This instruction was properly refused because it precluded the idea of the existence of such a thing as constructive notice, and made the responsibility of the District depend exclusively upon actual knowledge. Whilst the court was not bound to remedy the defect in this instruction and then give it to the jury, it nevertheless did so in the general charge,* wherein constructive notice is defined in terms which have met with the approval of the Supreme Court. *District of Columbia* v. *Woodbury*, 136 U. S. 463.

There being no error in the record, *the judgment appealed from must be affirmed; and it is so ordered.*

* NOTE.—The portion of the charge of the court below to which reference is made was as follows: "The District is sued upon the general principle that it is the duty of the District authorities to keep the highway in a safe condition for the travelling public. They are bound to see, ordinarily, that they are safe, and if any private individual or corporation should do any work or erect any structure in the public highway which is dangerous and an injury follows from it, then the District authorities are liable, if they had timely notice of the danger so that they might have averted it and removed the obstruction. If the District is doing the work itself, through its own laborers, of course they have notice of any danger that attends the work, and they are presumed to know all about it. The are not presumed to know what other people do in the street or to know all the acts that could not have been foreseen, occasioned by storms, the elements, or any other way. They are not responsible for the result of any accident of that sort unless they have timely notice or unless the defect has been open to observation so long that they would have had notice if their officers had discharged their duty of observing the condition of the highway generally."—REPORTER.