# W. F. MAIN COMPANY, ET AL., v. MORROW.

Execution — Bond of Indemnity to Sheriff.

1. A sheriff levied an execution upon chattels claimed by a third person, and the execution creditor with sureties furnished an indemnity bond to the sheriff conditioned that if said sheriff shall retain possession of the property and advertise and sell the same under the execution, the obligors will save harmless, indemnify, and pay him from all harm and trouble, and pay all damages, costs, actions, suits, judgments, and|executions that shall or may be brought, entered or issued against him; and thereafter the judgment was conditionally vacated, a new trial had resulting in judgment for defendants, and the execution recalled; the sheriff returned the execution, by such order of the court, without sale; and paid a judgment recovered against him for damages on account of the levy and detention. *Held*, in a suit by the sheriff, upon the indemnity bond, that the condition had been broken, and the obligors were liable upon the bond.

2. The bond covered all damages that might accrue to the sheriff in the premises, and was not limited to damages after levy, or after the making of the bond.

3. The obligors can not complain that after the judgment had been vacated, and the execution recalled, the sheriff surrendered the property levied on and returned the execution. That was his duty under the circumstances, and such acts on his part did not relieve the obligors, or either of them, from liability.

4. Before surrendering the property and returning the execution, the latter having been recalled upon vacation of the judgment, it was not necessary for the sheriff, in order to make the obligors liable, to consult with them; as such surrender and return was the only thing the sheriff was authorized to do under the writ upon its said recall.

[Decided June 30, 1899. Commenced in District Court July 20, 1897.]

Error to the District Court, Sheridan County, Hon. Joseph L. Stotts, Judge.

Action upon a bond of indemnity given to the sheriff
of Sheridan County to secure him against loss on account
of the levy of an execution upon chattels claimed by a
third person. Judgment for plaintiff. Defendants prose-
cuted error. The material facts are stated in the opinion.

*John P. Arnott*, and *Burke & Fowler*, for plaintiffs in
error.

(The points made by counsel for plaintiffs in error are
fully mentioned in the opinion, as well as the authorities
cited.)

*Appelget & Mullen*, for defendant in error.

The law does not require the performance of impossi-
ble conditions. When the court ordered the return of the
execution, the sheriff was obliged to obey the mandate.
No authority existed then to proceed under the execution.
He retained possession until his authority terminated.
The facts constituted a breach of the bond. (Herring
v. Happock, 15 N. Y., 409; Screws v. Watson, 48 Ala.,
628; Rockfellow v. Donnelly, 8 Conn., 628; Chase v.
Hindman, 8 Wend., 452; 25 O. St., 82.) The obligors
are concluded by the judgment against the sheriff.
(Gilbert v. Wiman, 1 N. Y., 550; Douglas v. Howland,
24 Wend., 55; Bridgeport v. Wilson, 34 N. Y., 280.)

Knight, Justice.

On July 22, 1896, the above-named W. F. Main Com-
pany commenced an action against Myles F. Traynor &
Company before Charles Lenwood, a justice of the peace,
for the sum of $196.24 for merchandise sold and de-
livered. A return of the summons issued showed service,
and on the return day thereof, July 25, 1896, default of
Myles S. Traynor & Company was duly entered, evidence
was presented and judgment rendered for the amount
claimed as aforesaid, and on the same day an execution

issued upon said judgment and was delivered to defendant in error, Frank Morrow, as sheriff, for service, and was served on the same day by said Morrow by levying upon a stock of goods and the fixtures known as the Golden Rule Store. Thereafter on July 27, 1896, said Morrow was furnished the following indemnity bond:

"KNOW ALL MEN BY THESE PRESENTS, That W. F. Main Company (a corporation), as principal, and W. F. Brittain and George L. Smith, as sureties, of the town of Sheridan, county of Sheridan, and State of Wyoming, are held and firmly bound unto Frank Morrow, sheriff of Sheridan County, Wyoming, in the penal sum of ONE THOUSAND DOLLARS, good and lawful money of the United States, to be paid to the said Frank Morrow, his executors, administrators, or assigns, for which payment well and truly to be made we do hereby bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents. Dated this 27th day of July, A. D. 1896."

"WHEREAS, The above bounden W. F. Main Company (a corporation), on the 25th day of July, 1896, recovered a judgment against the said Myles S. Traynor and Company for the sum of one hundred and ninety-six dollars and twenty-four cents ($196.24), before Charles Lenwood, a justice of the peace, of Sheridan County, Wyoming; and thereafter, on the 25th day of July, 1896, the said Charles Lenwood, justice of the peace, as aforesaid, issued an execution upon said judgment, and the same was delivered to Frank Morrow, sheriff of Sheridan County, State of Wyoming, for service. That on the said 25th day of July, 1896, the said Frank Morrow, as sheriff of Sheridan County, State of Wyoming, levied said execution upon a stock of merchandise, consisting chiefly of tinware, enamel steelware, hardware, notions, general line of kitchen furnishings, jewelry, silverware, glassware, cutlery, toys, toilet articles, etc., and said merchandise is now claimed by one Margaret Traynor."

"Now THE CONDITION OF THE ABOVE OBLIGATION IS

SUCH, If the said Frank Morrow as such sheriff shall retain possession of said merchandise, and advertise and sell the same under and by virtue of said execution, and the above bounden W. F. Main Company shall well and truly save harmless, indemnify, and pay to the said Frank Morrow and any and all persons aiding and assisting him in the premises, from all harm and trouble, and shall pay all damages, costs, suits, actions, judgments, and executions that shall or may at any time arise, come or be brought, entered, or issued against him, them, or any of them, then this obligation to be void; otherwise to be and remain in full force and effect."

On July 31, 1896, Myles S. Traynor & Company appeared before said Charles Lenwood, the justice of the peace who gave judgment against them and issued the execution as aforesaid, and upon a showing made secured an order conditionally setting aside said judgment and again setting the case for trial. On August 5, 1896, upon application of said Myles S. Traynor & Company the venue of said case was changed from said Charles Lenwood to Herbert W. Tyler, a justice of the peace, and on the same day, August 5, 1896, said Tyler as justice heard the evidence (there being an appearance by both parties), and found that there was an indebtedness from said Myles S. Traynor & Company to W. F. Main Company, a corporation, amounting to $196.24; "and that said indebtedness is represented by four certain promissory notes which have not been returned and that none of said notes are now due and payable," and said justice rendered the following judgment: " Wherefore it is by the court considered and adjudged that the said plaintiff's action be dismissed without day, and that the defendant have judgment for the costs of this action taxed at $46.05." What followed as to the execution issued as aforesaid appears as a part of the return thereon, which is as follows: "And on August 5, 1896, this execution is recalled by Herbert W. Tyler, justice of the peace of said county and properly ordered returned, whereupon I

returned the possession of said property to Margaret Traynor, from whose possession it was taken.''    As appears from the record the proceedings as above recited were never questioned or appealed from.    Subsequently on November 14, 1896, said Margaret Traynor commenced an action in the district court against defendant in error, Frank Morrow, as sheriff, for $500 damages by reason of the premises in substance as above recited, complaining of the levy upon and retention of the property as having been unlawful and wrongful.

The record shows that defendant in error, Frank Morrow, informed plaintiffs in error, George L. Smith and W. F. Brittain of the fact that said action had been commenced against him, by Margaret Traynor, and requested them to appear and defend the same, and shows that said Margaret Traynor in said action against him, the said Frank Morrow, recovered a judgment for the sum of $151, which he has paid.

On July 20, 1897, defendant in error, Frank Morrow, filed his petition and commenced this action in the district court against W. F. Main Company, a corporation, George L. Smith and W. F. Brittain, alleging as his cause of action the bond and facts above recited.    Service was had upon George L. Smith and W. F. Brittain, and the issues joined were substantially as to whether or not under the conditions of the bond hereinbefore set out in full there was any liability on their part.    The district court found there was such liability, and gave judgment for the defendant in error for the sum of $208.08, and plaintiffs in error, George L. Smith and W. F. Brittain, come to this court on error.

The argument and contention of plaintiffs in error here are separately stated upon four grounds, and are as follows :

'' First: It will be observed by a careful perusal of the indemnity bond in this case, that the condition of the bond was that the said Frank Morrow, as such sheriff, was to retain possession of said merchandise and adver-

tise and sell the same under and by virtue of said execution. It will be observed that according to the conditions of the indemnity bond the sureties were only liable for damages resulting from the retention, advertisement, and sale of the property levied upon."

" Second : The defendant in error in his action against the plaintiff in error, not only failed to allege a retention, advertisement, and sale of the property, in order to show a compliance with all the conditions of the indemnity bond on his part to be performed, but the execution and return thereon " Exhibit B " in this case, shows that he released the property levied upon, turned the same over to the possession of one Margaret Traynor, and returned the execution to Herbert W. Tyler, a justice of the peace, but not the same justice who issued said execution, and in this connection we desire to call the attention of the court to a stipulation which is a part of the record in this case, and will be found on page —— of the bill of exceptions and transcript, which stipulation reads as follows : ' It is admitted for the purposes of this trial by the plaintiff and answering defendants Brittain and Smith that the possession of the personal property mentioned and described in the petition in this case was by the plaintiff, as such sheriff, delivered to the possession of one Margaret Traynor without the knowledge, connivance, or consent of the answering defendants or either of them.' "

" Third: When sheriff releases the property without the consent of the bondsmen he releases the bondsmen."

" Fourth: It will be observed that this bond was executed two days after the levy was made and the property was taken possession of by virtue of the execution, and if there was any liability as against the bondsmen as sureties, such liability, if any, has already accrued."

In support of the above argument and contentions plaintiffs in error cite several cases, the first being that of Fury v. White, 53 Pac., 535, which was not referred to in the oral argument in this court, and we fail to find its application here. Reference is made to Bowe v.

Wilkins, 11 North Eastern, 839, in support of the statement, "The fact that this judgment was reversed in justice court, and the property released and delivered to Margaret Traynor, is sufficient to release the bondsmen and sureties, for the reason that the bond did not indemnify the sheriff (defendant in error) as against the reversal or setting aside the judgment."

An examination of the above case shows it to be in point on many of the issues here to be considered, and one of the statements in the sylabus shows its application and is warranted by the opinion of the court. "A bond of indemnity to a sheriff under an attachment conditioned that the obligors shall indemnify the sheriff from all liability suits and judgments against him by reason of the levying, attaching, and making sale under or by virtue of such attachment, and for the defense of any action brought against him for such taking, does not indemnify the sheriff for the expense of a suit brought against him for refusing without the knowledge or consent of the obligors to return the property after the attachment had been vacated." And the learned judge in his opinion makes use of the following language: "As to the first contention of the defendants, Was the act of the sheriff within the condition of the bond? We think not. When the attachment was vacated it became his duty upon reasonable demand to deliver the property to the defendant or to the person entitled to it. * * * The bond indemnified the sheriff for his act in taking the property as that of the defendant in the attachment suit, and for his keeping it under such attachment and refusing to give it up to Gallinger or any one else. The property was originally taken by virtue of the attachment, and the writ was the only justification for its retention, and if, in truth, it belonged to Gallinger, as he claimed, the writ would then furnish no justification for taking or retaining the property. The bond taken was intended to and did cover the writ. It can not be construed to cover a detention by the sheriff after the writ (which was his sole authority for

even taking and for continuing to keep the property) had been vacated. After such vacation the sheriff was bound to surrender the property upon reasonable demand, and his refusal to do so would be an illegal act which it can not be supposed the indemnitors in the bond proposed or assumed to indemnify against, and as to which if they had, such bond would have been void to that extent.'' Griffiths v. Hardenberger, 41 N. Y., 404, ''that the sheriff without the knowledge and consent of the indemnitors refused to deliver the property attached after the writ had been vacated the court held that his bond of indemnity was not liable for damages found against him.'' In the case here, defendant in error, Morrow, as sheriff, turned the property over as directed by the court, and on the same day, and by his petition, put that fact in issue and offered evidence in support thereof, and without doubt the trial court so found, and for all of which plaintiffs in error without cause or authority here complain. The remaining authority cited is in support of the proposition that by reason of the fact that the defendant in error, as sheriff, did not retain, advertise, and sell the property, there is and was no liability on the bond, and has been fully answered.

The second contention or argument made by plaintiffs in error seems to complain of the fact that the execution aforesaid was returned to a justice of the peace other than the one that issued the same. We take it that this ground of error has been abandoned, as no reference was made to it other than the above. It would seem that the proceedings had before the justice in setting aside the judgment he had rendered were within the provisions of Sec. 3470 of the Revised Statutes of Wyoming, and that the changing of the venue and recalling of the execution by the justice who obtained jurisdiction by reason of the change were within the provisions of our statutes, as has already been said the record shows no complaint of those orders. As to the fourth ground of argument or con-

tention made by the plaintiff in error as above we find that it has been fully and clearly discussed.

In the case of Lovejoy v. Murray, 3 Wall., 1, Mr. Justice Miller delivered the opinion of the court; and we give his language in that part of the opinion that is pertinent here:

" The record before us raises three questions, all of which depend upon the principles of the common law exclusively for their solution. We will consider them in the order in which they naturally arose on the trial, and in which also they have been argued.

Did the defendants, in giving a bond of indemnity to the sheriff, thereby become liable as joint trespassers with him in the proceedings under the attachment?

The question arises upon the hypothesis that a writ of attachment was issued in favor of the present defendants against one O. H. Pratt, which was wrongfully levied by the sheriff on property of the present plaintiff. The bond of indemnity given by the present defendants recites upon its face that the sheriff has already levied the attachment, and there is nothing in the case except the bond to show that in making the levy, or in anything done by the sheriff prior to the giving of the bond, he acted under the direction or instruction of the defendants, or at their request. That the attaching creditor is not answerable for the act of the officer, unless he in some manner interferes so as to make himself liable, must be conceded. And unless the defendants have so interfered in this case as to incur this responsibility the action can not be sustained.

It is contended by counsel that a trespass can not be ratified like a contract so as to make the party liable ab initio but it is not necessary to decide in this case, whether the defendant by giving the bond became liable for what had been done previous to that time. It is sufficient if they become liable for what was done by the sheriff after they gave the instrument. The trespass complained of was a continuing trespass, and consisted of a

series of proceedings ending in the sale of the plaintiff's property under execution. At the time the bond was given, the sheriff had merely taken possession of the goods under the attachment. No great injury had probably been done. The demand for indemnity, and the giving of it by the defendants, proceeded upon the supposition that the sheriff would without it go no further in that direction, but would give up the property to the claimant, the present plaintiff, and make his peace on the best terms he could. By the present statute of Iowa he had a right to do this, if the plaintiff in attachment refused to assume the hazard of indemnifying him. And if there were no statute, he had the right to deliver the property to the claimant, and risk a suit by the plaintiff in attachment, rather than a contest with the rightful claimant of the goods. The giving of the bond by the present defendant must, therefore, be held equivalent to a personal interference in the course of the proceeding, by directing or requesting the sheriff to hold the goods as if they were the property of the defendants in attachment. In doing this they assumed the direction and control of the sheriff's future action, so far as it might constitute a trespass, and they became to that extent the principals, and he their agent in the transaction. This made them responsible for the continuance of the wrongful possession, and for the sale and conversion of the goods; in other words, for all the real damages which plaintiff sustained. The first question must, therefore, be answered in the affirmative.''

An examination of this record clearly shows that the defendant in error as sheriff acted promptly and as was believed in the interest of the principal in the indemnity bond, and if his acts were wrongful, the plaintiffs in error, as sureties on said bond, were fully advised in the premises at the time they became such sureties. In the first place the bond is for all damages that may accrue to said sheriff in the premises, and is not limited to damages after levy or after the making of the bond. The recitation that said sheriff will retain possession and advertise

and sell is simply that he shall perform his duty as an officer under the law. He has done that. The judgment for damages against the sheriff is not devisable,—is not before this court; and we can not, even if it were necessary, or proper, consider the items which went to make up the judgment against him. The condition that the sheriff retain possession of and advertise and sell the property was fully complied with so far as he was authorized to do so. He retained it until the execution became null and of no further force. The surrender of the property occurred through no fault of his. The plaintiffs in error have no right to complain that said defendant in error after the execution (by virtue of which alone he took and retained possession) had been vacated by the setting aside of the judgment upon which it was issued, surrendered the property and returned said execution as he was lawfully required to do. Had he done otherwise this bond would not have protected him, nor could a bond have been made that would have done so under the circumstances. It was not necessary for him to consult with or obtain permission from the principal or sureties on the bond to do the only thing he or they could do at that time under and by virtue of said execution.

To say that because the bond indemnified against damages resulting from the retention, advertisement, and sale, of the property levied upon, and that after retention, and before advertisement, and sale, by operation of law, the execution became worthless, and under it no advertisement and sale could be made, and for that reason the bond was not liable, would be the same as saying that there was no liability on such a bond after such retention, if the property had been taken from the sheriff, on a writ of replevin.

We discover no error in this case, and the judgment is affirmed.

*Affirmed.*

Potter, C. J., Corn, J., concur.